(June 24, 1914.)

# STATE, Appellant, v. J. C. JOHNSON, G. F. HARTLEY and JOSEPH IRVIN, Respondents.

[141 Pac. 565.]

EXTERMINATION OF PREDATORY ANIMALS—SECS. 1197 AND 1198, REV. CODES, CONSTRUED—POWERS OF STATE SANITARY BOARD AND STATE VETERINARIAN UNDER—PAYMENT OF BOUNTIES NOT AUTHORIZED BY.

1. Secs. 1197 and 1198, Rev. Codes, provide for the extermination of predatory animals through the employment by the live-stock sanitary board of "experienced, competent and skilful hunters and trappers" at a *per diem* compensation. Such method having been specified by the statute, the board and the state veterinarian acting with it are precluded from resorting to other methods of extermination not authorized by law, such as the payment of bounties for the destruction of such aminals by persons not in the employ of the sanitary board.

2. If a statute is found by experience to be unwise or impracticable, relief must be sought through the legislature. Neither a state board in executing such statute, nor a court in construing it, has any authority to alter or amend it.

3. *Held,* that the trial court properly advised the jury to acquit the defendants.

APPEAL from the District Court of the Third Judicial District, in and for the County of Ada. Hon. Carl A. Davis, Judge.

Defendants were prosecuted on information for conspiracy in attempting to collect predatory animal bounty on spurious and fraudulent claims. Defendants acquitted. State appeals. *Affirmed.*

J. H. Peterson, Atty. Gen., T. C. Coffin, J. J. Guheen and E. G. Davis, Assts., for Appellant.

"Conflict and repugnance in statutes should always be avoided by construction, if possible. Indeed, a statute ought, upon the whole, to be so construed that, if it can be prevented,

no clause, sentence or word should be superfluous, void or insignificant." (*Jackson v. Kittle,* 34 W. Va. 207, 12 S. E. 484.)

The narrow construction placed on this statute by the district court, has the effect of making the expression, "to devise and put into operation," equivalent to the expression, "exercise no independent judgment whatever, nor put into operation any method save what is hereafter set forth."

"A contemporaneous construction, after a lapse of time, without change of that construction by legislation or judicial decision, has been declared to be generally the best construction." (Sutherland, Stat. Const., sec. 472; *Smith v. Bryan,* 100 Va. 199, 40 S. E. 652.)

An extreme case of where courts followed the contemporaneous construction of officers charged with the enforcement of a statute is the case of *Pennoyer v. McConnaughy,* 140 U. S. 1, 11 Sup. Ct. 699, 35 L. ed. 363.

Karl Paine and Solon Orr, for Respondents.

A perusal of secs. 1197–1204, Rev. Codes, shows that in the enactment of this act, the legislature purposed that the destruction of predatory animals should be prosecuted systematically; and that the predatory animal fund is appropriated to bear the expenses of such destruction and not as a bounty fund. The intention is to be ascertained by considering the entire statute. (Sutherland, Stat. Const., sec. 239.)

Sec. 1199 imposes upon the hunters and trappers employed by the board the duty of exercising the greatest care in putting out poison. The section makes a violation of any of its provisions by any of the hunters or trappers employed by the board a misdemeanor. A bounty claimant who so baited out poison would not be guilty of a misdemeanor under this section, because he is not employed by the board. Thus sec. 1199 would remain without operation or effect, and out of harmony with the remainder of the statute.

Statutes must be so construed as to give effect to all their provisions, so that no part will be inoperative, and so that

one part will not destroy another.    (Sec. 380, Lewis' Suther-
land, Stat. Const.)

Secs. 1200, 1204, and indeed the major portions of section
1197 and all of sec. 1198, are in like manner rendered inopera-
tive under appellant's construction, though they are serially
related in subject matter.

"Where there are in an act specific provisions relating to
a particular subject, they must govern in respect to that sub-
ject, as against general provisions in other parts of the stat-
ute, although the latter, standing alone, would be broad
enough to include the subject to which the more particular
provisions relate." (*Ihmsen v. Monongahela Nav. Co.,* 32
Pa. 153; *King v. Armstrong,* 9 Cal. App. 368, 99 Pac. 527;
*Frandzen v. San Diego County,* 101 Cal. 317, 35 Pac. 897;
*Nance v. Southern Ry.,* 149 N. C. 366, 63 S. E. 116.)

While section after section of this act teems with provisions
governing the work of the hunters and trappers, not a syllable
is expressed with respect to bounty claimants, nor the allow-
ance of a bounty.

There can be no intent of a statute not expressed in its
words.    (Sec. 388, Lewis' Sutherland, Stat. Const.)

AILSHIE, C. J.—The defendants were jointly informed
against and charged with the crime of conspiracy.

It was alleged that the defendants presented to the state
veterinarian for allowance certain claims on the bounty fund,
claiming a bounty for the killing and destruction of certain
animals, and that these claims were fictitious, fraudulent and
false.    Proofs were submitted in support of the allegations
of the information, but upon request of counsel for the de-
fendants the trial court advised the jury to return a verdict
in favor of the defendants, on the ground that the state live-
stock sanitary board and veterinary surgeon had no power or
authority to allow claims for bounties for killing predatory
animals, and that the only authority they had to pay for the
killing of such animals was by employing hunters and trap-
pers as authorized by sec. 1197 of the Rev. Codes.    Defend-
ants were acquitted and the state has appealed.

The only question presented for our consideration is "as to whether or not under the provisions of secs. 1197 and 1198 of the Rev. Codes, the livestock sanitary board and state veterinarian have the authority to provide for the allowance of bounties for the killing of predatory animals." It is quite clear to us that the board has no such authority. Secs. 1197 and 1198 of the Rev. Codes, known as the predatory animal act or livestock sanitary act, provide as follows:

Sec. 1197. "It is hereby made the duty of the sanitary board to exercise a general supervision over the subject of the killing and destruction of wolves, coyotes, wildcats and such other wild animals as are in the habit of preying upon and destroying sheep, calves, colts, pigs, poultry and other domestic animals and fowls and wild game, and to devise and put into operation such methods and means as will best secure and attain the object of exterminating such wild, destructive and pestiferous animals, and to this end they are hereby authorized and empowered to employ one or more experienced, competent and skilful hunters and trappers, as they may deem necessary, in each or any inspection district of the state; whose duty it shall be to work constantly and diligently with guns, traps, poison and any and every practicable means and methods, to procure and bring about the destruction of as many of such predatory animals as possible."

Sec. 1198. "The hunters employed in accordance with the preceding section shall each receive such compensation as may be agreed upon beforehand, not exceeding three dollars and fifty cents per day, and their employment shall always be liable to be discontinued at any time, at the pleasure of the board, and it shall be the duty of each and all of them, at all times, to work at such localities and along such plans of operation as the board may, from time to time, direct, and the board is hereby empowered and authorized to purchase old or undersized and cheap horses and other animals to be killed and used as bait for the purpose of poisoning the pestiferous animals hereinbefore mentioned, as well as all necessary poisons to be used in connection therewith, and also such traps and ammunition as shall be necessary or useful for the pur-

poses aforesaid: *Provided,* that the said trappers and hunters must use their own guns; and *provided, further,* that the board shall never expend a greater sum of money in any one year than thirty-five thousand dollars, and whenever that amount has been expended in the year, then and thereafter any and all further expenditures for the purposes of this article shall terminate and cease.''

Sec. 1156 authorizes the state veterinarian to act in conjunction with the livestock sanitary board in the enforcement of the act.

It will be seen from an examination of the foregoing provisions of the statute that it is made ''the duty of the sanitary board to exercise a general supervision over the subject of the killing and destruction of wolves, coyotes, wildcats and such other wild animals as are in the habit of preying upon and destroying sheep . . . . and to devise and put into operation such methods and means as will best secure and attain the object of exterminating such wild animals . . . . and to this end they are hereby authorized and empowered to employ one or more experienced, competent and skilful hunters and trappers, as they may deem necessary, in each or any inspection district of the state.''

Now, while the statute vests the general *supervision* of the subject in the board and authorizes them to *devise means* and point out methods of carrying on the work, the statute specifically designates the *agency* through which the work shall be accomplished, namely, through hunters and trappers to be employed by the board. If it had been the intention of the legislature to authorize the payment of bounties, they would undoubtedly have so provided in the statute, as had been prescribed in previous statutes in force in both territorial times and during statehood. Evidently the legislature did not intend to authorize the payment of bounties. Previous experiences under such law had proven unsatisfactory and had opened the way to a great deal of fraud which had been practiced upon the several counties. The legislature, therefore, created a livestock sanitary board and vested it with the power and authority to employ hunters, and gave them

absolute control and supervision over such employees and the power to direct and prescribe the means and methods such employees should use in carrying on the work. Not only this, but by sec. 1199 of the statute certain restrictions are laid upon hunters and trappers who may be employed by the board, and for a violation thereof or a failure to observe such restrictions such employees may be deemed guilty of a misdemeanor and punished accordingly. The restrictions of sec. 1199 would evidently not apply to mere bounty claimants and those who are not working in the employ of the state board acting under the authority of sec. 1197. Again, the moment the board converts this statute into a bounty statute and begins paying bounties, it opens the doors to the perpetration of the very frauds which are charged in this action and which the legislature evidently intended to guard against.

It is suggested that the board cannot accomplish anything by employing hunters and trappers, for the reason that they spend their time in their own work or do nothing and still claim their pay and that no results will be accomplished. That may be true, but it would seem that the board might be able to employ honest men for this kind of work as well as at anything else. However that may be, if the statute is unwise or impracticable, relief must be sought through the legislature. Neither the board, nor the courts, have any right to alter or amend the statute.

The trial court properly advised the jury to acquit the defendants, and the judgment should be affirmed, and it is so ordered.

Sullivan, J., and Walters, District Judge, concur.