(No. 5859. March 11, 1932.)

BEN DIEFENDORF, Tax Commissioner of the State of
 Idaho, Plaintiff, v. E. G. GALLET, State Auditor of
 the State of Idaho, Defendant.

[10 Pac. (2d) 307.]

620

Fred J. Babcock, Attorney General, and Sidman I. Barber, Assistant Attorney General, for Plaintiff.

J. L. Eberle, A. A. Fraser and P. B. Carter, for Defendant.

LEEPER, J.—Pursuant to a proclamation of the Governor, the legislature of Idaho was convened in special session on March 6, 1931, and thereafter enacted an income tax law which was approved on March 17, 1931. (Sess. Laws 1931, Extraordinary Session, chap. 2.) In its general provisions the law follows closely the context of the federal income tax law, and levies upon all resident taxpayers, and to the extent of income derived within the state upon all non-resident taxpayers, a graduated tax measured by net income. The tax base is arrived at by deducting from gross income from all sources, including gains and profits from personal services, business and property (as defined in sections 12, 16 and 28 of the act), the deductions allowed by sections 13 and 29 and the credits provided by section 15.

This is an original proceeding instituted by the tax commissioner for a writ of mandate directed to the state auditor requiring him to certify to the state board of examiners a bill for supplies incurred by the plaintiff in carrying out

the provisions of the act. The answer to the alternative writ squarely questions the constitutionality of the law, and the facts are agreed.

. There are before us three general lines of inquiry. One has to do with the power of the state to impose a tax upon net incomes. The second is concerned with the constitutional aspects of the various provisions of this particular law. The third relates to the regularity of the enactment of the law.

The power of the state to enact income tax legislation is dependent upon a construction of sections 2, 3 and 5 of article 7 of the state Constitution, which reads as follows:

"The legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that every person or corporation shall pay a tax in proportion to the value of his, her, or its property, except as in this article hereinafter otherwise provided. The legislature may also impose a license tax (both upon natural persons and upon corporations, other than municipal corporations, doing business in this state); also a *per capita* tax: Provided, The legislature may exempt a limited amount of improvements upon land from taxation." (Const., art. 7, sec. 2.)

"The word 'property' as herein used shall be defined and classified by law." (Const., art. 7, sec. 3.)

"All taxes shall be uniform upon the same class of subjects within the territorial limits, of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal: Provided, That the legislature may allow such exemptions from taxation from time to time as shall seem necessary and just, and all existing exemptions provided by the laws of the territory, shall continue until changed by the legislature of the state: Provided further, That duplicate taxation of property for the same purpose during the same year, is hereby prohibited." (Const., art. 7, sec. 5.)

To resolve the inquiry as to whether the power exists, two questions must be met: First, is a tax upon net income from all sources a tax upon property within the meaning

of the above sections of the Constitution, which must be laid uniformly and according to value? Second, if not such a tax, can the state levy this form of tax; or reversely, are *ad valorem* license and poll taxes the exclusive methods of taxation available to the state?

The act itself (section 78) provides that net income *"shall not be classified or held or construed to be property,"* this no doubt being in response to Const., art. 7, sec. 3, providing that "the word 'property' as herein used shall be defined and classified by law." The legislature by section 78 did define and classify net income to the extent indicated. At the outset, therefore, we are met with this legislative declaration enacted under a constitutional delegation of power to define and classify. Before considering the ultimate effect of this legislative declaration, however, we deem it best to appraise the applicable law without reference to it.

In substance the Constitution provides that *all property, real and personal,* must be taxed uniformly by value. (Const., art. 7, secs. 2 and 5.) Nowhere does the Constitution itself attempt to define or classify for purposes of taxation, that power being delegated to the legislature. (Const., art. 7, sec. 3.) The statutes provide that "all property shall be taxed" (C. S., sec. 3096), and define *for the purposes of taxation* real property (C. S., sec. 3101) and personal property (C. S., sec. 3102). It may be conceded that these broad general definitions of property *for purposes of taxation* are adequate to embrace almost everything capable of ownership which properly falls within their scope, which is limited and determined by the construction to be placed upon the words "tax" and "taxation" as used in the sections of the Constitution and the statutes aforesaid.

The tax sought to be imposed by this act is a graduated impost upon the annual net income received from all sources by the taxpayer. It is against the person of the taxpayer, and is not assessed against any items of property, nor is it a lien on property. Neither is it a tax on gross gain from property or business. The personal nature of the imposition is made clear by section 70 of the act: "Every tax imposed by this act, . . . . shall be a debt from the taxpayer to the state.

.... '' Section 62 provides that a taxpayer who evades payment is guilty of a misdemeanor and may be punished accordingly. The tax accrues even though all of the income by which it is measured has been disposed of before the date of the tax. The law as a whole indicates an intent to impose a personal obligation only upon the taxpayer, and there is no slightest suggestion in it that the tax attached to the *corpus* of any class or kind of property. Indeed, this inference is expressly negatived wherever possible.

Income is defined as: ''Something derived from property, labor, skill, ingenuity, or sound judgment, or from two or more in combination.'' (*Stony Brook R. Corp. v. Boston & Maine R. Co.*, 260 Mass. 379, 53 A. L. R. 700, 157 N. E. 607.) It is true that income may be included within the generic definition of personal property (C. S., secs. 5326 and 9456). We are not, however, here concerned with the question as to whether or not it is *some specie of property* (which is admitted), but as to whether or not it can properly be considered as *property for purposes of taxation* within the true scope and meaning of sections 2 and 5 of article 7 of the Constitution and the general taxation statutes.

''And the point to be decided is, not whether *income* may not, possibly, be comprehended under the general name of property, but whether such is its meaning, and such was the design of the legislature in this act.'' (*Featherstone v. Norman*, 170 Ga. 370, 70 A. L. R. 449, 153 S. E. 58.)

 It has already been said by this court that the provisions of sections 2 and 5 of article 7 of the Constitution refer solely to taxation by assessment and levy in the commonly understood significance of that term.

''The provisions of that section of our constitution, requiring all taxes to be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and to be levied and collected under general laws which shall prescribe such regulations as shall insure a just valuation for taxation of all property, real or personal, refers solely to taxation according to the commonly accepted meaning of that term, by assessment, levy and collection and

does not apply to license or registration fees. It is to be borne in mind that the law under consideration does not impose a tax upon property, but imposes a registration fee, or license, upon the privilege of operating motor vehicles upon the public highways." (*In re Kessler*, 26 Ida. 764, Ann. Cas. 1917A, 228, 146 Pac. 113, L. R. A. 1915D, 322.)

This being so, it follows that the term "property" as used therein must also be taken in its commonly accepted significance of the *corpus* of an estate or investment, as distinguished from the annual gain or revenue from it (Black on Income and Other Federal Taxes, 4th ed., sec. 34), since this form of property is the only kind reasonably subject to assessment and levy at a specified time. That such was the intent of the framers of the Constitution is a conclusion logically deducible from a survey of the facts and circumstances surrounding the execution of that document. General territorial laws long in force had provided for the *ad valorem* taxation of all property *as of a certain date.* In 1889 and prior thereto, men had acquired income and certainly knew of its attributes; likewise taxes upon incomes were not at all unknown, as many such had been levied by the federal government during the Civil War, and uniformly prior to the Idaho Constitutional Convention, these taxes had been held to be excise taxes, and not taxes upon property. (*Pollock v. Farmers' Loan & Trust Co.*, 157 U. S. 429, 15 Sup. Ct. 673, 39 L. ed. 759; *Brushaber v. Union Pac. R. Co.*, 240 U. S. 1, Ann. Cas. 1917B, 713, 36 Sup. Ct. 236, 60 L. ed. 493, L. R. A. 1917D, 414; *Springer v. United States,* 102 U. S. 586, 26 L. ed. 253, 259; *Michigan Cent. R. Co. v. Slack,* 100 U. S. 595, 25 L. ed. 647.) Also most of the text-writers of the preceding period had likewise so defined the tax upon incomes. So far as our search has availed us, no court or text-writer had held that a tax upon net income is a tax upon property. It is to be presumed that the members of the constitutional convention were fully aware of this background of definition and construction, and comprehended and used the term "property" in the taxation clauses in the meaning we have ascribed to it, i. e., "the *corpus* of an estate or investment, as distinguished from the

annual gain or revenue derived from it." It is reasonably to be concluded that the power to tax incomes was considered by the constitutional convention to be in that reservoir of function existing in the state not expressly curtailed by the Constitution, along with the power to exact all other forms of excise taxes not prohibited or limited. This is the implication arising from a consideration of the constitutional debates upon the subject, and there is nothing appearing therein to the contrary. The same meaning appears to have attached to the term "property" in all subsequent taxation legislation and in the taxing practices of the executives, and we take judicial notice that income, as such, has never been assessed or taxed as property in the state of Idaho.

Defendant makes the broad general contention that income from whatever source derived is property for the purpose of taxation, and that a tax thereon is a property tax. Principal stress is laid, however, upon the charge that a tax upon income derived from property, such as rent, interest, etc., is a tax upon the property itself, which is unconstitutional because not laid uniformly according to value, and that the entire act must fail if power to tax income from property be denied. Defendant relies principally upon certain language of the majority opinion in *Pollock v. Farmers' Loan & Trust Co.,* 157 U. S. 429, 15 Sup. Ct. 673, 39 L. ed. 759, which, if taken out of the context and without reference to the immediate objects of that action, incline towards his position. It is to be remembered, however, that the Pollock case only decided that a tax upon the income from property was such a direct tax as had to be apportioned under the existing provisions of the federal Constitution. We can best place the Pollock case in true balance by referring to the later case of *Brushaber v. Union Pac. R. Co.,* 240 U. S. 1, Ann. Cas. 1917B, 713, 36 Sup. Ct. 236, 60 L. ed. 493, L. R. A. 1917D, 414, wherein the court said:

"Moreover in addition, the conclusion reached in the Pollock Case did not in any degree involve holding that income taxes generically and necessarily came within the class of direct taxes on property, but, on the contrary, recognized

the fact that taxation on income was in its nature an excise entitled to be enforced as such and until it was concluded that to enforce it would amount to accomplishing the result which the requirement as to apportionment of direct taxation was adopted to prevent, in which case the duty would arise to disregard form and consider substance alone, and hence subject the tax to the regulation as to apportionment which otherwise as an excise would not apply to it.''

The Pollock case is also distinguished in *Featherstone v. Norman,* 170 Ga. 370, 70 A. L. R. 449, 153 S. E. 58, and in *Sims v. Ahrens,* 167 Ark. 557, 271 S. W. 720.

Defendant relies, aside · from the Pollock case, upon decisions from Alabama, Massachusetts and Oregon. The Alabama decisions, *Eliasberg Bros. Mercantile Co. v. Grimes,* 204 Ala. 492, 11 A. L. R. 300, 86 So. 56, and dependent cases immediately following, hold squarely that income is property for the purposes of taxation, and have never been qualified. The Massachusetts cases hold generally to the same effect. (*Maguire v. Tax Commr.,* 230 Mass. 503, 120 N. E. 162; *Eaton, Crane & Pike Co. v. Commonwealth,* 237 Mass. 523, 130 N. E. 99; *Kennedy v. Commissioner,* 256 Mass. 426, 152 N. E. 747; *In re Opinion of the Justices,* 266 Mass. 583, 165 N. E. 900; *In re Ponzi,* 6 Fed. (2d) 324.) However, the rule is severely qualified in the case of *Stony Brook R. Corp. v. Boston & Maine R. Co.,* 260 Mass. 379, 53 A. L. R. 700, 157 N. E. 607, which held that a tax upon the income from property was not a tax upon the property itself within the covenant of a lease to pay taxes. *Redfield v. Fisher,* 135 Or. 180, 73 A. L. R. 721, 292 Pac. 813, strongly relied upon by defendant, is not in point. The tax there considered and held to be a property tax was an impost of five per cent upon the gross income from a definite type of property only (intangibles). Upon petition for rehearing, reported at 135 Or. 205, 73 A. L. R. 721, 295 Pac. 461, the court expressly recognized the distinction between a tax levied against the person upon all net income received and a tax upon the gross income derived from certain specified property, held that the latter is not an income tax, and reaffirmed the decision of *Standard Lumber Co. v. Pierce,*

112 Or. 314, 228 Pac. 812. It is also to be noted that the two Mississippi cases referred to by defendant, *Thompson v. Kreutzer*, 112 Miss. 165, 72 So. 891, and *Thompson v. McLeod*, 112 Miss. 383, Ann. Cas. 1918A, 674, 73 So. 193, L. R. A. 1918C, 893, can be distinguished for the same reason and that as authority in the instant action they are nugatory in view of the later decision of *Hattiesburg Grocery Co. v. Robertson*, 126 Miss. 34, 25 A. L. R. 748, 88 So. 4. A careful review of these authorities indicates that in only one jurisdiction, Alabama, has the rule that net income from all sources is property been upheld without qualification or restriction, and these cases have been severely criticised in many others subsequently decided in other jurisdictions.

This contention of defendant rests entirely upon the doctrine of ultimate burden. Other authorities dealing with analogous situations are many. A tax upon a manufacturer measured by his gross receipts from sales, though sold in interstate commerce, is not a tax upon the commerce. (*American Mfg. Co. v. St. Louis*, 250 U. S. 459, 39 Sup. Ct. 522, 63 L. ed. 1084.) A tax upon income from all sources is not, as applied to one whose income was derived from exporting, a tax upon exportation (*Peck & Co. v. Lowe*, 247 U. S. 165, 38 Sup. Ct. 432, 62 L. ed. 1049.) A tax upon the net income of an interstate carrier does not violate the commerce clause of the federal Constitution. (*Atlantic Coast Line R. Co. v. Doughton*, 262 U. S. 413, 43 Sup. Ct. 620, 67 L. ed. 1051; *United States Glue Co. v. Oak Creek*, 247 U. S. 321, Ann. Cas. 1918E, 748, 38 Sup. Ct. 499, 62 L. ed. 1135.) The kilowatt tax imposed by chapter 2 of the 1931 Session Laws, Extraordinary Session, is an excise tax. (*Utah Power Co. v. Pfost*, 52 Fed. (2d) 226.) Inheritance taxes, even though a direct burden upon property, are in the nature of excise taxes. (*State v. Dunlap*, 28 Ida. 784, Ann. Cas. 1918A, 546, 156 Pac. 1141.) In countless other instances taxes have been levied upon the income from businesses and property used therein, which have been held to be excises and not direct impositions upon the property itself. To these may be added that line of authorities which hold that a tax upon the income of the

owner is not a tax on property within the meaning of a covenant in a lease to pay all taxes assessed upon the demised premises.

"No case has been cited, and we are unable to fine one, holding that an income tax is a tax on an interest in land; and the nature of the tax itself, which is a tax made on the net income of the individual, is such as to preclude the idea of a tax against property." (*Young v. Illinois Athletic Club,* 310 Ill. 75, 30 A. L. R. 985, 989, 141 N. E. 369.)

See, also, *Stony Brook Corp. v. Boston & M. R. Co., supra; Des Moines Union R. Co. v. Chicago G. W. R. Co.,* 188 Iowa, 1019, 9 A. L. R. 1557, 177 N. W. 90; *Van Rensselaer v. Dennison,* 8 Barb. (N. Y.) 23; *Codman v. American Piano Co.,* 229 Mass. 285, 118 N. E. 344; *Park Bldg. Co. v. George R. Yost Fur Co.,* 208 Mich. 349, 175 N. W. 431; *Catawissa R. Co. v. Philadelphia & Reading Ry. Co.,* 255 Pa. 269, 99 Atl. 807; *Woodruff v. Oswego Starch Factory,* 177 N. Y. 23, 68 N. E. 994.

State income tax laws have been passed upon in the court of last resort in eight states, other than Alabama and Massachusetts, all of which states have constitutional provisions substantially similar to sections 2 and 5 of article 7 of the Idaho Constitution. In each of these cases the same contention has been made that is urged in this case, i. e., that income is property within the intent of the Constitution and that a tax thereon is a direct property tax which must be laid uniformly by value. We shall not attempt to analyze all of them, but select *Ludlow-Saylor Wire Co. v. Wollbrinck,* 275 Mo. 339, 205 S. W. 196, as representing a sound and clear summary of the reasoning upon which such a contention has been denied.

"That income is property because it is an ownable thing, is a matter of simple apprehension which has been affirmed under the definition of property above stated. That it is, 'in effect' a taxation of the labor or capital which produced it, may be conceded, since by reaction it affects the value of the thing or things from which it is derived. But none of these considerations alter the fact that incomes are distinguishable from the tangible or intangible property yielding

them, nor do they affect the established law in Missouri, that incomes are thus connoted by our Constitution and decisions. These recognize incomes as one of the classes entering into the concept of property not required to be taxed in proportion to value, and, therefore, not falling within the designation of property which the legislature is forbidden to tax except in that way; and (as a consequence of the plenary power of that body to raise revenue at will, absent a constitutional prohibition) falling wholly within the scope of the authority of the legislature to impose taxes for the sustenance of the state without measuring its *impose* by the value of the thing taxed. Taxation of incomes, therefore, does not offend section 4 of article 10 of the constitution of 1875.'' (*Ludlow-Saylor Wire Co. v. Wollbrinck, supra.*)

The whole field of precedent is analyzed in *Featherstone v. Norman,* 170 Ga. 370, 70 A. L. R. 449, 153 S. E. 58; *Hattiesburg Grocery Co. v. Robertson,* 126 Miss. 34, 25 A. L. R. 748, 88 So. 4; *Glasgow v. Rowse,* 43 ·Mo. 479; *Waring v. Savannah,* 60 Ga. 93; *Purnell v. Page,* 133 N. C. 125, 45 S. E. 534; *State v. Philadelphia, Wilmington & Baltimore Ry. Co.,* 45 Md. 361, 24 Am. Rep. 511; *Opinion of the Justices,* 77 N. H. 611, 93 Atl. 311; *State ex rel. Knox v. Gulf M. & N. R. Co.,* 138 Miss. 70, 104 So. 689; *Stanley v. Gates,* 179 Ark. 886, 19 S. W. (2d) 1000; *Sims v. Aherns,* 167 Ark. 557, 271 S. W. 720.

A number of states, including Kentucky, Massachusetts, Oklahoma, South Carolina and Wisconsin, have adopted express constitutional provisions for an income tax, and while cases from these jurisdictions necessarily are based upon their respective Constitutions, we refer especially to the following from Wisconsin as apposite to this discussion: *State ex rel. Manitowac Gas Co. v. Wisconsin Tax Com.,* 161 Wis. 111, 152 N. W. 848; *State ex rel. S. F. Moon Co. v. Wisconsin Tax Com.,* 166 Wis. 287, 163 N. W. 639, 165 N. W. 470.

These cases hold that a tax upon net income is in the nature of an excise tax, rather than a property tax.

"Income is necessarily the product of the joint efforts of the state and the recipient of the income, the state furnishing the protection necessary to enable the recipient to produce, receive, and enjoy it, and a tax thereon in the last analysis is simply a portion cut from the income and appropriated by the state as its share thereof, and, while a tax on income includes some of the elements both of a tax on property and a tax on persons, it cannot be classified as strictly a tax on either, for it is generically and necessarily an excise, and should be enforced as such unless and until so to do would accomplish the result which section 112 of the constitution was adopted to prevent, which is to prevent discrimination in the taxation of property, so that all property shall bear its due proportion of the burdens of government." (*Hattiesburg Grocery Co. v. Robertson, supra.*)

█ It is difficult to arrive at any all-inclusive definition of the term excise tax, since it has long since been changed from its original connotation of an impost· upon a privilege. In its modern sense an excise tax is any tax which does not fall within the classification of a poll tax or a property tax, and embraces every form of burden not laid directly upon persons or property.

"Excises, in their original sense, were something cut off from the price paid on a sale of goods, as a contribution to the support of government. The word has however come to have a broader meaning and includes every form of taxation which is not a burden laid directly upon persons or property; in other words, excise includes every form of charge imposed by public authority for the purpose of raising revenue upon the performance of an act, the enjoyment of a privilege, or the engaging in an occupation. (26 R. C. L. 34, sec. 18.)

█ Thus, an inheritance tax is an excise. (*State v. Dunlap,* 28 Ida. 784, Ann. Cas. 1918A, 546, 156 Pac. 1141.) Likewise, the automobile registration fee (*In re Kessler,* 26 Ida. 764, Ann. Cas. 1917A, 228, 146 Pac. 113, L. R. A. 1915D, 322), the gasoline tax (*Independent School Dist. v. Pfost, ante,* p. 240, 4 Pac. (2d) 893), and the transportation tax (*Smallwood v. Jeter,* 42 Ida. 169, 244 Pac. 149), are excise taxes. An income tax, being neither poll nor property tax,

necessarily is an excise. Its attributes are best defined in *State v. Wisconsin Tax Com.*, 166 Wis. 287, 163 N. W. 639, 165 N. W. 470:

"Much confusion of thought arises from regarding the income tax as a tax that is levied upon or attaches to property as such, irrespective of the person sought to be taxed. It is the recipient of the income that is taxed, not his property; and the vital question in each case is, Has the person sought to be taxed received an income during the tax year? If so, such income, unless specifically exempted, is subject to a tax though the property out of which it is paid may have been exempt from an income tax in the hands of the payor. It is the relation that exists between the person sought to be taxed and the specific property claimed as an income to him that determines whether there shall be a tax. If the person sought to be taxed is the recipient during the tax year of such specific property as income in its ordinary significance, then the person is taxed. *But the tax is upon the right or ability to produce, create, receive, and enjoy, and not on specific property.* Hence the amount of the tax is measured by the amount of the income, irrespective of the amount of specific property or ability necessary to produce or create it. In the ordinary acceptation of the term this may be said to be a tax upon income as the statute denominates it. But the tax does not seek to reach property, or an interest in property as such. It is a burden laid upon the recipient of an income."

We are now in position to further consider the legal significance of section 78 of the act. (In section 3, article 7, the Constitution delegates to the legislative branch of the government the power to classify and define property for purposes of taxation. Mindful of the obligation upon us to construe a statute so as to avoid absurdity and to effect the legislative intent, we hold that the legislature by this section did classify and define income as "not . . . . to be property." Upon a complete survey of the field of precedent we have reached the independent conclusion that income is not property for the purposes of taxation under the provisions of our Constitution. The very utmost that the de-

fendant urges is that there is a conflict of authority. In the light of our previous discussion, can it be urged that this co-ordinate branch of our state government can overturn the solemn decision of the legislative branch in the exercise of powers expressly delegated to it, and to it alone? We are not confronted with an arbitrary exercise of power by the legislature which might offend other sections of the state or federal Constitution. Rather do we find a legislative definition in line with the great weight of the decided law, and in accord with the apparent intent of the constitutional convention and the understanding of previous legislatures.

█ Certainly we are bound to respect the reasonable exercise by the legislature of powers expressly delegated to it by the Constitution, and in the absence of other constitutional offense cannot interfere with it. This is a fundamental concept of American government, embodied in our own Constitution. (Const., art. 2, sec. 1.) )

"It seems to us that to keep within the spirit of our constitution (section 1, art. II) and form of government which recognizes the independence and specific character of the 'three distinct departments' of government, that the judicial department could not attempt to prohibit either of the other departments from *acting* within the recognized scope of their respective branches of the government, but that on the other hand the legal effect of such action after it has been taken may be inquired into by the court." (*Stein v. Morrison,* 9 Ida. 426, 75 Pac. 246.)

See, also, *Balderston v. Brady,* 17 Ida. 567, 107 Pac. 493. For this court to substitute its classification and definition for that of the legislature would amount to an invasion of the legislative province. (*Holmberg v. Jones,* 7 Ida. 752, 760, 65 Pac. 563; *Ingard v. Barker,* 27 Ida. 124, 135, 147 Pac. 293; *Moore v. Ashton,* 36 Ida. 485, 32 A. L. R. 1512, 211 Pac. 1082; *State v. Johnson,* 26 Ida. 203, 141 Pac. 565.)

█ █ The power of the state to classify, define and exempt for taxation purposes is plenary and exclusive under our Constitution. (*Independent School Dist. v. Pfost, supra; Achenbach v. Kincaid,* 25 Ida. 768, 140 Pac. 529; *In re Kessler, supra; Idaho Power Co. v. Blomquist,* 26 Ida. 222,

Ann. Cas. 1916E, 282, 141 Pac. 1083; *Williams v. Baldridge,* 48 Ida. 618, 249 Pac. 203; 12 C. J. 883, sec. 387.) It seems clear that this classification and definition by the legislature is neither so arbitrary nor so discriminatory as to offend either Constitution. We feel, therefore, that even had we reached a different conclusion than we have in construing precedents, nevertheless we could not nullify the act of the legislature in thus defining income as "not . . . . to be property," and substitute our own classification of it for taxation purposes. In so holding we not only coincide with the decided body of our own law, but with a general rule which appears to be without dissent. (12 C. J. 883, sec. 387.) This conclusion necessarily destroys the effectiveness of precedents presented by defendant which we have heretofore discussed. This entirely unique section of our Constitution (art. 7, sec. 3) completely differentiates this case from all others which we have examined.

Suggestion is made that at the same session at which the Income Tax Law was enacted the legislature passed a resolution submitting a constitutional amendment to a vote of the people at the general election of 1932, thereby acknowledging that income is property. The premise does not justify the conclusion. The act of submitting a constitutional amendment has no bearing upon the legal implications surrounding the present income tax law, regardless of whatever opinion the members of the legislature may have had. Nor may we speculate upon the motives or purposes of the legislature, which is outside of our domain. The present law purports to raise revenues for state purposes only, whereas the proposed amendment authorizes the imposition of a tax on incomes, sales, privileges and occupations, for state, county and municipal purposes. It also provides for a limitation upon taxation of incomes, goes much further than does the present income tax law. No precedent has been cited upon the proposition and we know of none.

Defendant takes the position that even though a tax upon net income is an excise and not a property tax, the state has no power to impose it, for the reason that the methods of taxation provided for in section 2, art. 5, of the

Constitution, i. e., *ad valorem* property tax, poll taxes and license taxes on business, are the exclusive means provided for raising state revenues. He is foreclosed by the previous decisions of this court.

"Certainly our constitution does not expressly prohibit the people of Idaho from raising revenue in the manner provided in chapter 179 of the Session Laws of 1913, and while it is true there are three methods of raising revenue expressed in sec. 2 of art. 7 of the constitution, we cannot infer from this that an implication arises prohibiting the state from also raising revenue pursuant to its inherent power to do so in any other manner its legislature may see fit to adopt." (*In re Kessler,* 26 Ida. 764, Ann. Cas. 1917A, 228, 146 Pac. 113, 114, L. R. A. 1915D, 322.)

For the same reason the gasoline tax has been sustained in *Independent School Dist. v. Pfost, supra:*

"The tax in question is by a method other than those mentioned in section 2, article 7 of the Constitution, but is not on that account unconstitutional, because it is not necessary that the Constitution expressly authorize the legislature to enact each and every kind of tax adopted by it. An act is legal when the constitution contains no prohibition against it."

See, also, *Idaho Power & Light Co. v. Blomquist,* 26 Ida. 222, Ann. Cas. 1916E, 282, 141 Pac. 1083; *Williams v. Baldridge, supra; Achenbach v. Kincaid, supra.* Defendant concedes that this authority exists but charges that the rule enunciated is erroneous. We do not feel called upon to re-examine this question, in view of the absence of any substantial authority otherwise. It is a fundamental rule of constitutional law that a state Constitution is an instrument of limitation and not of grant, that all powers are retained to the state not expressly withheld, and the decisions in this state are bottomed squarely upon that rule. No good purpose could be served by further discussion here.

Two other matters are raised by defendant which go to the validity of the act as a whole. One is that, as charged by defendant, no such emergency existed as would

justify or authorize the Governor to call a special session of the legislature and therefore its convocation was illegal and its enactments void. The other is that there was no such urgency or emergency existing as justified or authorized the passage of this act by the legislature without reading on three separate days, and printing it, as required by the Constitution, art. 3, sec. 15. Both objections may be considered together as they are generically the same. Neither is sound for the same reason, which we have heretofore advanced as to our inability to interfere with the legislative definition of income. The legislative, judicial and executive branches of our state government are made separate by the Constitution (art. 2, sec. 1). Neither can interfere with the other. (*Stein v. Morrison, supra; Holmberg v. Jones, supra; Moore v. Village of Ashton, supra.*) In substance we are asked to substitute the judgment of this court for that of the Governor and the legislature upon their respective acts, and this we cannot do.

The Constitution, art. 4, sec. 9, authorizes the Governor to convene the legislature in special session by proclamation "on extraordinary occasions." The determination as to whether facts exist such as to constitute "an extraordinary occasion" is for him alone to determine. The responsibility and the discretion are his, not to be interfered with by any other co-ordinate branch of the government.

"It would be an unprecedented proceeding for the court to entertain a controversy wherein proof is offered to ascertain judicially whether an extraordinary occasion existed of sufficient gravity to authorize the governor to convene the legislature in extra session. The character of the legislation to be considered by the legislature was by the constitution left to the governor, and a review of such a discretionary act of the governor should not be done by the courts." (*Utah Power & Light Co. v. Pfost,* 52 Fed. (2d) 226.)

"It was the exclusive province of the governor, under the constitution, to determine whether an occasion existed of sufficient gravity to require an extra session of the legislature, and his conclusion in that regard is not subject to review by the courts. *Farrelly v. Cole,* 60 Kan. 356, 56 Pac. 492,

44 L. R. A. 464.'' (*State v. Fair*, 35 Wash. 127, 102 Am. St. 897, 76 Pac. 731.)

See, also, *Farrelly v. Cole*, 60 Kan. 356, 56 Pac. 492, 44 L. R. A. 464; *In re Legislative Adjournment*, 18 R. I. 830, 27 Atl. 324, 22 L. R. A. 716; *Lasseter v. State*, 67 Fla. 240, 64 So. 847; *In re Veto Power*, 9 Colo. 642, 21 Pac. 477; *Simpson v. Hill*, 128 Okl. 269, 56 A. L. R. 706, 263 Pac. 635, 643; *Whiteman's Exr. v. Wilmington & Susq. R. R. Co.*, 2 Harr. (Del.) 514, 33 Am. Dec. 411; *Bunger v. State*, 146 Ga. 672, 92 S. E. 72.

Three cases closely analogous in principle were decided by this court (*In re Pettibone* and *In re Haywood*, 12 Ida. 264, 85 Pac. 902, and *In re Moyer*, 12 Ida. 250, 118 Am. St. 214, 85 Pac. 897, 12 L. R. A., N. S., 227), in which the court refused to inquire into the discretion of the Governor in issuing a warrant for the extradition of a prisoner. In the Moyer case the court said:

''The motives which prompted the governor of a state to take such action or make such determination are not proper subjects of judicial inquiry. Such inquiry would be opposed both to the plainest principles of public policy and the freedom of action by the executive within the constitutional authority of that department of government.''

The identical reasoning applies to the determination of urgency by the legislature. The record shows that an urgency was declared and the rules suspended by the required two-thirds vote in each house in accord with sec. 15, art. 3, of the Constitution. This is a purely legislative act. We cannot speculate either upon the adequacy of the facts before the legislature or the motives of the legislators. (*Weyland v. Stover*, 35 Kan. 545, 11 Pac. 355; *People v. Glenn County*, 100 Cal. 419, 38 Am. St. 305, 35 Pac. 302; *Couch & Duncan v. Skeen*, 109 Va. 6, 63 S. E. 11; *Hull v. Miller*, 4 Neb. 503.)

To summarize, we have decided: (1) A tax upon net income is not a tax upon property. (2) Such a tax is an excise tax. (3) The legislature has power to impose this tax. (4) The income tax law was validly enacted.

There remains for consideration four major objections to the income tax law: First, it imposes duplicate taxation upon property for the same purpose for the same year in violation of section 5, article 7, of the Idaho Constitution. Second, the taxes imposed by it are not laid uniformly, in violation of section 5, article 7, of the Idaho Constitution. Third, it deprives taxpayers of property without due process of law and of the equal protection of the law in violation of the fourteenth amendment of the federal Constitution. Fourth, it imposes a direct burden upon interstate commerce in violation of the federal Constitution. We shall consider these objections in the above order.

Defendant urges that, in so far as gain from property is concerned, the imposition of the income tax thereon amounts to duplicate taxation contrary to Const., art. 7, sec. 5, which provides: " . . . . Provided further, That duplicate taxation of property for the same purpose during the same year, is hereby prohibited." The charge is that duplication will exist because: (1) The property from which the gain was derived is taxed upon its value. (2) The portion of such income as remained in hand, invested in property classified as subject to the property tax would be taxed upon the *ad valorem* basis.

Our holding that the tax upon net income is an excise, and not an imposition upon the property from which it is derived, disposes of the first contention. The latter is founded upon a wrong premise. The income tax is not a tax upon any property whatsoever; it is "a burden laid upon the recipient of the income." It is imposed whether the income is kept or spent, and duplicate taxation within the meaning of the Constitution does not arise because a portion of income may ultimately pass into the form of taxable wealth and be taxed *ad valorem*. The inhibitions of section 5, article 7, are against duplicate direct property taxes for the same purpose for the same year (*Humbird Lumber Co. v. Kootenai County*, 10 Ida. 490, 79 Pac. 396), and extend no further than those contained in the uniformity clause of the same section and the equal protection clause of the fourteenth amendment of the federal Constitution. "The

payment of an income tax almost necessarily involves, in some indirect and limited sense, the payment of a double tax.'' (26 R. C. L. 153, sec. 125.) But this is not double taxation within the meaning of the constitutional prohibitions. As stated by Cooley:

''Duplicate taxation may be direct or indirect. Direct duplicate taxation, and by this is meant 'double taxation' in the strict legal sense of the term, means taxing twice, for the same purpose, in the same year, some of the property in the territory in which the tax is laid, without taxing all of it a second time; .... There is no double taxation, strictly speaking, where (a) the taxes are imposed by different states, (b) one of the impositions is not a tax, (c) one tax is against property and the other is not a property tax, (d) the double taxation is indirect rather than direct.

''Indirect duplication of a tax is not objectionable. The courts hold either that such duplication is not double taxation, within the legal meaning of the term, or that such duplication is not obnoxious double taxation. Whether there is injustice in the taxation in every instance in which it can be shown that an individual who has been 'directly' taxed his due proportion is also compelled 'indirectly' to contribute is a question not necessary to discuss. It is sufficient to show that the decisions are nearly, if not quite, unanimous in holding that taxation is not invalid. because of any such unequal results. For instance, a system of indirect taxes combined with a system of general taxation by value, must often have the effect to duplicate the burden upon some species of property or upon some persons.'' (1 Cooley on Taxation, 4th ed., pp. 475, 476, sec. 223.)

The identical contention with reference to the tax on automotive transportation for hire was urged in *Smallwood v. Jeter*, 42 Ida. 169, 244 Pac. 149, and denied in the following language:

''The five per cent tax levied by the act is not a 'toll' .... It is a license tax laid not upon the vehicle, but upon the privilege of using the highways for business purposes. (*City of St. Louis v. Western Union T. Co.*, 148

U. S. 92, 13 Sup. Ct. 485, 37. L. ed. 380; *Cardwell v. American R. B. Co.*, 113 U. S. 205, 5 Sup. Ct. 423, 28 L. ed. 959.) For the same reason that it is a license tax, it does not violate the provisions of Idaho Const., art. 7, sec. 5, which requires a uniformity, and prohibits duplication, of taxes.''

See, also, *State v. Jones*, 9 Ida. 693, 75 Pac. 819; Black on Income and Other Federal Taxes, 4th ed., sec. 19. There is no duplicate taxation imposed by this act.

The next objection goes to the uniformity of the tax, defendant assuming the position that in certain particulars the income tax is not laid uniformly, in violation of Idaho Const., art. 7, sec. 5, and contrary to due process, whereby the taxpayer is deprived of due process and equal protection of the laws. The concrete examples of constitutional contravention suggested by defendant are: (1) Graduated rates are imposed, whereby greater burdens are placed upon greater net incomes. (2) Exemptions are allowed to married persons greater than are allowed to single persons. (3) Credits are allowed to individuals which are withheld from corporations. (4) The diversion of income tax to the relief of the *ad valorem* levy for state purposes operates unequally in that the payer of an income tax thereby pays part of the *ad valorem* taxes of other persons. As these objections are essentially the same we shall consider them together.

The state has the power to classify for the purposes of taxation, only limited by the rule that the classification must be reasonable and founded upon differences between the parties. The equality clause does not forbid reasonable classification. Discrimination through classification is said to violate that clause only where it is such as ''to preclude the assumption that it was made in the exercise of legislative judgment and discretion.'' (*Stebbins v. Riley*, 268 U. S. 137, 44 A. L. R. 1454, 45 Sup. Ct. 424, 69 L. ed. 884.)

The federal attitude toward the rights and powers of a state to reasonably adjust its system of taxation is best expressed in *Bell's Gap R. R. Co. v. Commonwealth of Pennsylvania*, 134 U. S. 232, 10 Sup. Ct. 533, 33 L. ed. 892, 895:

"The provision in the fourteenth amendment, that no state shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a state from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for the payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage are within the discretion of the state legislature, or the people of the state in framing their constitution."

Classifications will always be upheld where they rest upon differences which have a logical relation to the subject sought to be regulated or burdened and are not palpably arbitrary and capricious. (*Atchison, T. & S. F. R. Co. v. Matthews,* 174 U. S. 96, 19 Sup. Ct. 609, 43 L. ed. 909; *German-Alliance Ins. Co. v. Lewis,* 233 U. S. 389, 34 Sup. Ct. 612, 58 L. ed. 1011, L. R. A. 1915C, 1189; *Heath & M. Mfg. Co. v. Worst,* 207 U. S. 338, 28 Sup. Ct. 114, 52 L. ed. 236; *Orient Ins. Co. v. Daggs,* 172 U. S. 557, 19 Sup. Ct. 281, 43 L. ed. 552; *Mutual Loan Co. v. Martell,* 222 U. S. 225, Ann. Cas. 1913B, 529, 32 Sup. Ct. 74, 56 L. ed. 175.)

None of the classifications complained of are objectionable. (*State ex rel. Knox v. Gulf, M. & N. R. Co.,* 138 Miss. 70, 104 So. 689.) The supreme court of the United States in construing the federal income tax has uniformly sustained the progressive graduation of tax, and the differences in exemptions and rates of tax as applied to individuals and corporations. (*Brushaber v. Union Pac. R. Co.,* 240 U. S. 1, Ann. Cas. 1917B, 713, 36 Sup. Ct. 236, 60 L. ed. 493, 504, L. R. A. 1917D, 414; *Fort Smith Lumber Co. v. Arkansas, etc.,* 251 U. S. 532, 40 Sup. Ct. 304, 64 L. ed. 396, 399.) Credits allowed to individuals are based upon

the need of reserving to them unimpaired an income adequate to provide the necessities of life (*In re Opinion of the Justices,* 84 N. H. 559, 149 Atl. 321), a purpose which cannot be applied to corporations. See, also, *Stanley v. Gates,* 179 Ark. 886, 19 S. W. (2d) 1000. The progressive form of tax has been upheld in *State v. Frear,* 148 Wis. 456, Ann. Cas. 1913A, 1147, 134 N. W. 673, 135 N. W. 164, L. R. A. 1915B, 569, 606, and *Shields v. Williams,* 159 Tenn. 349, 19 S. W. (2d) 261. Similar provisions of inheritance tax laws have repeatedly construed in favor of the power of the state to so classify. (*Magoun v. Illinois Trust & Savings Bank,* 170 U. S. 283, 18 Sup. Ct. 594, 42 L. ed. 1037, 1042; *Knowlton v. Moore,* 178 U. S. 41, 20 Sup. Ct. 747, 44 L. ed. 969; *Campbell v. California,* 200 U. S. 87, 26 Sup. Ct. 182, 50 L. ed. 382.) This court has upheld the power to classify with reference to the automobile tax and the transportation tax. (*In re Kessler,* 26 Ida. 764, Ann. Cas. 1917A, 228, 146 Pac. 113, L. R. A. 1915D, 322; *Smallwood v. Jeter,* 42 Ida. 169, 244 Pac. 149.) The discrimination between single and married people in the matter of exemptions is reasonable, based no doubt upon the government policy of preserving and furthering the home. We can see no possible violation of the equality or uniformity provisions because the act directs that funds derived from the income tax be applied toward the reduction of the state *ad valorem* levy. Certainly it is a permissible end of government to require that a certain portion of the expenses of the state be paid by the income tax, rather than out of the *ad valorem* levy. The object sought to be obtained by this provision was to prevent the state from acquiring large revenues from an income tax with the unrestricted power to spend them, in addition to the revenues provided by the *ad valorem* tax. This purpose seems to us entirely desirable and well within the powers of the legislature. The payer of the income tax certainly has no vested right to require that his money be diverted to other purposes than that provided, nor can it be reasonably said that he is thereby paying the tax of another.

Nor does the broad, general objection that the law imposes an unconstitutional burden upon interstate com-

merce rest upon a foundation any more firm than we have discussed. The answer to this is that the tax imposed is not upon gross revenues arising out of interstate traffic, but is upon the net income only derived from this and all other sources. Such a tax is not in its general aspects a violation of the constitutional inhibition against laying a direct burden against interstate commerce. (*Shaffer v. Carter*, 252 U. S. 37, 40 Sup. Ct. 221, 64 L. ed. 445, 459; *United States Glue Co. v. Oak Creek*, 247 U. S. 321, Ann. Cas. 1918E, 748, 38 Sup. Ct. 499, 62 L. ed. 1135; *Peck & Co. v. Lowe*, 247 U. S. 165, 38 Sup. Ct. 432, 62 L. ed. 1049; *Atlantic Coast Line R. Co. v. Doughton*, 262 U. S. 413, 43 Sup. Ct. 620, 67 L. ed. 1051, 1058; *Underwood Typewriter Co. v. Chamberlain*, 254 U. S. 113, 41 Sup. Ct. 45, 65 L. ed. 165; *State ex rel. Knox v. Gulf, etc., supra.*)

The law imposes upon those who derive gain from within the state a fair and equitable tax, levied in graduated proportion upon their ability to pay, which is in all respects valid and constitutional. Therefore let the writ be made permanent. No costs are awarded.

Lee, C. J., Givens and Varian, JJ., and Babcock, D. J., concur.