(June 14, 1901.)

## HOLMBERG v. JONES, State Auditor.

[65 Pac. 563.]

CREATION OF COUNTY—INVALID STATUTE.—A county cannot be created by implication and intendment merely, and a statute passed ap-parently for the purpose of creating a county is invalid for that purpose when it fails to declare in express language the creation of such proposed county.

STATUTORY CONSTRUCTION — INTERPOLATION BY THE COURT.—While courts do, in order to carry out the will of the legislature, which has been expressed in an imperfect way, interpolate punctuation, or words evidently intended to be used, into a statute, yet, when the matter to be interpolated comprises the real substance of the act, the court is not authorized to make such interpolation.

JUDICIAL AMENDMENT OF STATUTE — IMPINGING LEGISLATIVE FUNC
TIONS.—Judicial amendment of a statute, made by interpolating
or adding words thereto, which create a county, would impinge
upon the function vested solely in the legislature, and is beyond
the power of the court, although the court may believe, from
a reading of the statute, that the legislature intended to create a
county.

(Syllabus by the court.)

An original proceeding for writ of mandate.

John A. Brown, John J. Blake and W. E. Borah, for Plaintiff.

Section 4 of article 18 as originally found in the constitution
reads as follows: "No new county shall be established which
shall reduce any county to an area of less than four hundred
square miles, nor shall a new county be formed containing an
area of less than four hundred square miles." The alleged
amendment, which would be amendment 4 of the constitution,
reads as follows: "No new county shall be established which
shall reduce any county to an area of less than four hundred
square miles, nor the valuation of its taxable property to less
than one million dollars, nor shall any new county be formed
which shall have an area of less than four hundred square miles
and taxable property of less than one million dollars as shown
by the last previous assessment." It is claimed that the creation of Clearwater county comes within the inhibition of the
taxable property clause. It is the contention of the petitioner
that the courts must resort to the journals of the legislature
to determine whether or not the provision of the constitution
has been complied with, and unless the journals affirmatively
show that the provisions of the constitution with reference to
amendments were followed, that the proposed amendment never,
in fact, became a valid amendment to the constitution. Our
court has said: "Each house is required by section 13, article
3 of the constitution to keep a journal of its proceedings." This
means that the journal shall show all of the proceedings of
the house and all of the steps taken in the passage of every bill.
By reason of this provision, the journal becomes not only the
best evidence, but the exclusive evidence of what was done by

the house keeping such journal and the courts must impute to the record and statements in the journal absolute verity. (*Cohn v. Kingsley,* 5 Idaho, 416, 49 Pac. 985; *Burkhart v. Reed,* 2 Idaho, 503, 22 Pac. 1; *Clough v. Curtis,* 2 Idaho, 522, 22 Pac. 8; *Wright v. Kelly,* 4 Idaho, 624, 43 Pac. 565; *Blaine County v. Heard,* 5 Idaho, 6, 45 Pac. 890; *Bellevue Water Co. v. Stockslager,* 4 Idaho, 636, 43 Pac. 568; *Koehler v. Hill,* 6 Iowa, 543, 14 N. W. 738, 15 N. W. 609; Cooley's Constitutional Limitations, 163, 169.) We cite the following authorities upon the question that the court must return to the journals and be governed by them, as to a compliance with the provisions of the constitution with reference to the passage of resolutions or bills: *People v. Mahaney,* 13 Mich. 481; *Supervisors v. Henan,* 2 Minn. 289; Sedgwick on Statutory and Constitutional Law, 2d ed., secs. 54, 55; Black's Constitution Law, 60, 265; Endlich's Interpretation of Statutes, sec. 33; 1 Wharton on Evidence secs. 290-295; 1 Greenleaf on Evidence, sec. 491; *Henderson v. State,* 94 Ala. 95, 10 South. 333; *State v. Wright,* 14 Or. 365, 12 Pac. 708; *State v. Robinson,* 20 Neb. 96, 29 N. W. 246; *State v. Kiesewetter,* 45 Ohio St. 254, 12 N. E. 807; *State v. Mead,* 71 Mo. 266; *Spangle v. Jacoby,* 14 Ill. 297, 58 Am. Dec. 571, and note; *Ritchie v. Richards,* 14 Utah, 345, 47 Pac. 670; *Glidewell v. Martin,* 51 Ark. 559, 11 S. W. 882; *In re Roberts,* 5 Cal. 528; *Berry v. Company,* 41 Md. 446; *Hull v. Miller,* 4 Neb. 503; *Opinions of Justices,* 35 N. H. 579; *Brown v. Nash,* 1 Wyo. 85; *Brewer v. Huntington,* 86 Tenn. 732, 9 S. W. 166; *Wise v. Begler,* 39 Va. 269; *Osborne v. Staley,* 5 W. Va. 85, 13 Am. Rep. 640, and note. Constitutional provisions must be strictly complied with. (Andrews' American Law, sec. 121; Cooley on Constitutional Limitations, 2d ed., 93, 94, 149; *Hunt v. State,* 21 Tex. App. 397; *State v. Tufly,* 19 Nev. 391, 12 Pac. 835; *Collier v. Frierson,* 24 Ala. 108; *Koehler v. Hill,* 60 Iowa, 543, 14 N. W. 738; *Koehler v. Hill,* 60 Iowa, 543, 15 N. W. 609; *State v. Brookhart,* 113 Iowa, 250, 84 N. W. 1064; *State v. Tooker,* 15 Mont. 8, 37 Pac. 840, 25 L. R. A. 560; *Prohibitory Amendment Cases,* 24 Kan. 710; *Oakland v. Hilton,* 69 Cal. 500, 11 Pac. 3.)

Frank Martin, Attorney General, and J. F. Ailshie, for Defendant.

If the county of Clearwater has been created, it has been done by the legislation set out in the sections above quoted. We contend that nowhere in the act can be found language creating or organizing a county. It may be said that the legislative intent is apparent to create a county to be called and known as Clearwater county. We will answer that contention in the language of Mr. Endlich: "But the business of the interpreter is not to improve the statute, it is to expound it. Whilst he is to seek for the intention of the legislature, that intention is not to be ascertained at the expense of the clear meaning of the words. The question for him is not what the legislature meant, but what its language means. It is inaccurate to speak of the meaning or intent of a statute as something separate or distinct from the meaning of its language." (Endlich's Interpretation of Statutes, secs. 6-8; Sutherland on Statutory Construction, sec. 234; *Steere v. Brownell*, 124 Ill. 31, 15 N. E. 26; *Swift v. Luce*, 27 Me. 285; Potter's Dwarris on Statutes 199, 200; *Tynan v. Walker*, 35 Cal. 642, 95 Am. Dec. 152.) The title is not a part of the law in a legislative sense, and hence can never enlarge the scope of a statute. It cannot of itself confer any power. (Sutherland on Statutory Construction, sec. 212; *V. & T. R. R. Co. v. Lyon Co.*, 6 Nev. 68.) Four full years elapsed between the time of the submission of the amendment and the time it was first questioned. In *People v. Alturas County*, 6 Idaho, 418, 55 Pac. 1067, this court through its present chief justice, said: "The conclusion in this case is based upon a rule of estoppel demanded in this case by public policy." (See authorities there cited. Also, *State v. Gray*, 21 Nev. 378, 32 Pac. 190; *Miller v. Johnson*, 92 Ky. 589, 18-S. W. 522, 15 L. R. A. 524; In *Prohibitory Amendment Cases*, 24 Kan. 720; *Baker v. Scott*, 4 Idaho, 596, 43 Pac. 76; *Stackpole v. Hallahan*, 16 Mont. 40, 40 Pac. 80.) "Amendments derive their force from the action of the people and not from the action of the assembly which proposes them. . . . . If the amendment is adopted it ceases to be a mere resolution of the assembly and becomes 'to all intents and purposes' a part of the constitu-

tion." (*Manly v. State,* 7 Md. 147; *Nesbit v. People,* 19 Colo. 441, 36 Pac. 226; *Etate v. Mason,* 43 La. Ann. 590, 9 South. 776-803; *Worman v. Hagan,* 78 Md. 152, 21 L. R. A. 716, 27 Atl. 616.)

Per CURIAM.—This is an original proceeding in this court to obtain a writ of mandate compelling the defendant, as state auditor, to furnish the plaintiff, as treasurer of Clearwater county, all necessary blank licenses which the law requires the state auditor to furnish to county treasurers, and which the defendant fails and refuses to do. The defendant, as state auditor, denies the existence of Clearwater county. The petition alleges that the governor, acting under authority of an act passed by the sixth session of the legislature, approved March 22, 1901, appointed the plaintiff to the office of treasurer of Clearwater county, on the —— day of April, 1901, and that the plaintiff had qualified as such officer, assumed the duties of the said office, and was acting thereunder. The court made an order directing the defendant, as state auditor, to show cause why a peremptory writ of mandate, as prayed, should not issue, and in response to said order the defendant answered denying the existence of the county of Clearwater, and the question before this court for decision is as follows: Is the act of March 22, 1901, entitled "An act to create and organize the county of Clearwater and define the boundaries of Shoshone, Idaho and Nez Perces counties," valid?

It is contended on behalf of the defendant that the amendment to section 4, article 18, of the constitution, submitted or attempted to be submitted to the people for adoption or rejection, and which received a majority of the votes cast at the election of 1898, and which was, by order made by the board of canvassers, on the fifth day of December, 1898, declared adopted, never became a part of the constitution, on the ground that the resolution submitting the same to the people never passed the legislature, for the reason that out of the forty-nine members of the House of Representatives only seventeen voted in favor of its passage, while eleven voted against its passage, and twenty-one did not vote. The duly certified transcript of

the journal of the House, filed as evidence in this proceeding, shows that upon the passage of the said resolution in the House, March 1, 1897, seventeen members voted for its passage, and eleven voted nay, while there were absent and not voting twenty-one members. It will thus be seen that said resolution did not receive the votes of two-thirds of all members of the House. Section 1, article 20, of the constitution is as follows: "Any amendment or amendments to this constitution may be proposed in either branch of the legislature, and if the same shall be agreed to by two-thirds of all the members of each of the two Houses, voting separately, such proposed amendment or amendments shall, with the yeas and nays thereon, be entered on their journals, and it shall be the duty of the legislature to submit such amendment or amendments to the electors of the state at the next general election, and cause the same to be published without delay for at least six consecutive weeks, prior to said election, in not less than one newspaper of general circulation published in each county; and if a majority of the electors shall ratify the same, such amendment or amendments shall become a part of this constitution." It will thus be seen that the people, in adopting the constitution, pointed out the manner in which amendments thereto might be proposed by the legislature and submitted to the people. Sections 3 and 4 of the same article provide the manner in which a constitutional convention may be called, and a constitution, as revised and amended by such convention adopted.

There are two questions raised in this proceeding. The first involves the validity of the said constitutional amendment. The other is, if said constitutional amendment be invalid, is the said act creating, or attempting to create, Clearwater county, valid notwithstanding?

If the said constitutional amendment be valid, then the act attempting to create Clearwater county is void—unconstitutional, for the reason that said amendment requires that the territory comprised within the boundaries of a proposed new county must contain taxable property to the value of $1,000,000, as shown by the last preceding assessment, before such new county can be created, and it is stipulated and agreed that the

assessable property within the territory of what is claimed to be Clearwater county does not exceed $800,000. On the other hand, it is contended that, even though the said constitutional amendment be declared void—of no effect—yet the said act does not, in terms, create the so-called county of Clearwater, and that no such county exists.

The first question presented is fraught with much embarrassment. The court is asked to hold that what is claimed to be a part of the constitution is unconstitutional—a very delicate question, to say the least. It will be seen, from a reading of the provisions of section 1, article 20, quoted above, that the power to propose amendments has been granted by the people to the legislature. While the power of the legislature to enact laws is inherent, so far as legislative enactment is concerned, yet the power to propose amendments to the constitution is not inherent. The power to make constitutions and to amend them is inherent, not in the legislature, but in the people. This being true, should the so-called amendment be held void for the reason that the resolution proposing it did not receive a sufficient number of votes in the lower house of the legislature? The amendment was proposed by a department of the government authorized to propose it. It was duly published, and every voter must be presumed to have been familiar with its terms. It was, in the manner provided by the constitution, so far as the question of its adoption or rejection is concerned, submitted by ballot to the voters of the state for adoption or rejection, and was by a large majority (13,322 for, 2,677 against) adopted. The only irregularity is the fact that it did not receive the votes of two-thirds of the members of the house. It cannot be questioned but that any voter of the state, by proper proceedings in the district court, or in this court, could have obtained a writ of prohibition restraining the Secretary of State from certifying the question of adopting said proposed amendment to the various county auditors. The official ballot could have been protected against the improper submission of such question, and could have been purged of the presence of such question thereon, by proper judicial proceeding. This not being done, and the question of the adoption of said amendment being suffered to appear upon the official ballot at the election

in 1898, should not the rule of estoppel which was applied by this court in case of *Baker v. Scott*, 4 Idaho, 596, 43 Pac. 76, and in *People v. Alturas Co.*, 6 Idaho, 418, 55 Pac. 1067, and which applies to ordinary elections, be applied here? The authorities upon this point are divided, and, in our view of this case, it is not necessary for us to determine this point.

After the enacting clause, section 1 of the act of March 22, 1901, is as follows: "That all that portion of the state of Idaho included within the following boundaries, to wit: Beginning at the southeast corner of Kootenai county on the watershed separating the waters of the St. Mary and Clearwater rivers; thence in an easterly direction, . . . . to the place of beginning." Sections 2 and 3 declare that all that portion of Shoshone and Nez Perces counties, respectively, "not embraced within the boundaries of the county of Clearwater as described in section 1 of this act," shall hereafter constitute the counties of Shoshone and Nez Perces, respectively. Section 4 provides that "the governor of the state of Idaho is hereby authorized and directed within thirty days after the establishment of the county of Clearwater, by act of the legislature of the state of Idaho, to appoint for the county of Clearwater the following officers, to wit". Section 5 provides that "the county seat of said county of Clearwater shall be after the establishment of the county, located at the present town of Oro Fino." In sections 6, 7, and 10 the phrase, "after the establishment of Clearwater county," is used. There is no declaration anywhere in the act that the territory described in the first section shall constitute or be the county of Clearwater. It might be inferred from the language of the second and third sections that it was the intention of the legislature to create, by the passage of this act, the county of Clearwater, yet other language in the act, especially the phrase, "after the establishment of the county of Clearwater," followed immediately by the phrase, "by act of the legislature of the state of Idaho," found in section 4 of the act, negatives the idea that the legislature intended to create a county by the passage of this act, and lends color to the idea that it intended to pass another act creating or "establishing" the "county of Clearwater." But, be this as it may, can the legislature, by

mere intendment, by implication, without any express declaration, lop off from certain counties specified territory, and create out of such territory a new county? Unless this may be done, the act in question fails to create the county of Clearwater, and no such county has been established. It is true that a reading of the entire act shows that the legislature intended that a county to be known as the "County of Clearwater" should be established out of the territory described in the first section of the act, but as to whether it intended to establish such county by the act in question is extremely doubtful, as is shown by the quotations hereinbefore made. Be this as it may, and let it be regarded as beyond question that the legislature intended to create the county of Clearwater, it is evident that it did not do so. Can the court take a lifeless body and breathe into it life? Can the court take an act which does not create a county, and by interpolation create a county, because it is apparent that the legislature intended to create one? This would give the court more power over legislation than it possesses over ordinary contracts between private parties, and would impinge upon the power vested solely in the legislature by the constitution. This court does not feel that it has authority to create a county. It is of the opinion that the act in question falls far short of creating or establishing the so-called "County of Clearwater." The creation of new counties, which means division and elimination of old counties, is a matter of too much importance to public interests to be done purely by intendment or implication. We are cited to no statute similar to the one in question here. We are cited to no instance in which a court has taken a similar statute and held that it created a county. As to how far a court may or may not go in helping out legislative enactments by eliminations and interpolations—judicial amendments—the authorities are somewhat conflicting. We are of opinion, however, that, both by authority and principle, the court cannot do that which the legislature perhaps intended to do, but wholly failed to do. A review of the authorities cited throws no great light upon the question before us. Mr. Endlich, in his work upon Interpretation of Statutes, at section 8, quotes this language with approval: "The court knows nothing of the intention

of an act, except the words in which it is expressed, applied to the facts existing at the time." See, also, sections 6 and 7, same authority. Mr. Sutherland, in his work on Statutory Construction, at section 261, quotes with approval Chief Justice Ruffin, in the following words: "Whether a statute be a public or private one, if the terms in which it is couched be so vague as to convey no definite meaning to those whose duty it is to execute it ministerially or judicially, it is necessarily inoperative. The law must remain as it was, unless that which professes to change it be itself intelligible." The same author, at section 234, says: "A legislative intention, to be efficient as law, must be set forth in a statute."

It is true that the title of the act shows an intention to create the county of Clearwater, but the act as a whole (the title is no part of it) shows that it was probably contemplated that the county of Clearwater should be established by another act, to be passed by the legislature. It is difficult to conceive that the legislature would specifically create a county in the first section of an act, and then, in succeeding sections, speak of such county as uncreated—"to be hereafter established"—yet we must arrive at this conclusion if we do what we are asked to do, viz., hold that the legislature added to the description of territory in the first section after the words, "to place of beginning," these words, "shall constitute and be the county of Clearwater," and that by some error in drafting, engrossing, or enrolling the latter words were omitted. It would be mere assumption upon the part of the court to so conclude. It would be tantamount to saying that the legislature declared the county of Clearwater established in one breath, and in the next one speak of it something to be thereafter established. While courts do, in order to carry out the will of the legislature, expressed in an imperfect way, interpolate punctuation or words evidently intended to be used, yet, when such interpolation comprises the real substance of the act—in this instance, words creating a county—the court is not authorized to make such interpolation.

It follows from what has been said that the county of Clearwater has not been established and does not exist. Therefore the writ of mandamus demanded should not issue, but should

be denied; and it is so ordered. The clerk is directed to tax no costs to either party, the parties to the proceeding acting as officers for the public, and in relation to public business.