Argued May 11, writ disallowed May 25, 1964

HOLMES ET AL *v.* APPLING
392 P. 2d 636

*Keith D. Skelton,* Eugene, and *Verne W. Newcomb,* Portland, argued the cause for plaintiffs. With them on the brief were Sabin, Dafoe & Newcomb and Jack B. Schwartz, Portland.

*John J. Tyner, Jr.,* Assistant Attorney General, Salem, argued the cause for defendant. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

Before MCALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, DENECKE, LUSK and WARNER, Justices.

ROSSMAN, J.

This is a mandamus proceeding of which this court took original jurisdiction under the Constitution of Oregon, Article VII, Section 2, and ORS 34.120. The petitioners are two former governors of this state, the Honorable Robert D. Holmes and the Honorable Charles A. Sprague. The defendant is the Secretary of State of this state. The purpose of the proceeding is to compel the defendant to furnish a ballot title for a measure which the plaintiffs seek to have submitted to the voters of Oregon for their approval or rejection at the election to be held on November 3, 1964, pursuant to the initiative provisions of the Constitution of Oregon. The alternative writ alleges that heretofore the plaintiffs delivered a signed copy of an initiative petition to the defendant, who sent two copies thereof

to the Attorney General for the furnishing of a ballot title; that the Attorney General has transmitted a ballot title to the defendant, but the defendant has refused to perform his mandatory duty to furnish them a ballot title, as required by ORS 254.060 (2).[1] The measure which the plaintiffs desire to have thus submitted to the electorate is entitled: "Proposed Constitutional Amendment."

As stated in his answer to the alternative writ, the defendant refused to furnish a ballot title for the measure because he had been advised by the Attorney General that the petition proposed a new constitution or a revised constitution and that the initiative power reserved to the people to amend the constitution does not permit the submission to the people of a revised or new constitution and that he was acting upon such advice.

The question for decision is whether the proposed measure is, in truth, an amendment of the existing constitution, a revision of that document, or a new constitution.

---

[1] ORS 254.060 provides:

"(1) When a copy of the petition for any measure to be referred to the people of the state or of any district composed of two or more counties, either by the initiative or referendum, is filed with the Secretary of State, as provided by ORS 254.030, or when the submission to the people of any proposed constitutional amendment or measure is ordered by the Legislative Assembly, the Secretary of State shall immediately transmit two copies thereof to the Attorney General.

"(2) Within 10 days after receiving the copies the Attorney General shall provide a ballot title for the measure and return one copy to the Secretary of State, together with the ballot title so prepared by him.

"(3) A copy of the ballot title shall be furnished by the Secretary of State with his approved form of any initiative or referendum petition, as provided by ORS 254.030, to the persons or organizations under whose authority the measure is initiated or referred."

We proceed to an examination of the relevant provisions of the present constitution.

Article IV, Section 1, Constitution of Oregon, states:

> "* * * the people reserve to themselves power to propose laws and amendments to the Constitution and to enact or reject the same at the polls, independent of the Legislative Assembly * * *. The first power reserved by the people is the initiative * * *. Initiative petitions shall be filed with the Secretary of State * * *."

It will be noticed that that section of our constitution is concerned with the power to propose "amendments to the constitution." It does not employ the term "revision."

Article XVII, Section 1, states:

> "Any amendment or amendments to this Constitution may be proposed in either branch of the legislative assembly, and if the same shall be agreed to by a majority of all the members elected to each of the two houses, such proposed amendment or amendments shall, with the yeas and nays thereon, be entered in their journals and referred by the secretary of state to the people for their approval or rejection, at the next regular general election * * *. If a majority of the electors voting on any such amendment shall vote in favor thereof, it shall thereby become a part of this Constitution. * * * When two or more amendments shall be submitted in the manner aforesaid to the voters of this state at the same election, they shall be so submitted that each amendment shall be voted on separately. No convention shall be called to amend or propose amendments to this Constitution, or to propose a *new* Constitution, unless the law providing for such convention shall first be approved by the people on a referendum vote at a regular general election.

This article shall not be construed to impair the right of the people to amend this Constitution by vote upon an initiative petition therefor." (Italics added.)

That section of our constitution refers to "amendment or amendments" and to a "new" constitution. Like Article IV, Section 1, from which we quoted above, it does not mention a revision.

From the foregoing it appears that Article IV, Section 1, authorizes the use of the initiative as a means of amending the Oregon Constitution, but it contains no similar sanction for its use as a means of revising the constitution. Section 1 of Article XVII specifies the method whereby the legislature may propose amendments; it provides that "Any amendment or amendments" may be proposed in either branch of the Legislative Assembly and if the proposal meets with the approval of a majority of all the members elected to each of the two houses, the "amendment or amendments shall, with the yeas and nays thereon, be entered in their journals and referred by the secretary of state to the people for their approval or rejection."

We come now to the provisions dealing with revision of the constitution.

Section 2, subdivision 1, of Article XVII provides:

"In addition to the power to amend this Constitution granted by section 1, Article IV, and section 1 of this Article, a revision of all or part of this Constitution may be proposed in either house of the Legislative Assembly and, if the proposed revision is agreed to by at least two-thirds of all the members of each house, the proposed revision shall, with the yeas and nays thereon, be entered in their journals and referred by the Secretary of State to the people for their approval or rejection, notwith-

standing section 1, Article IV of this Constitution, at the next regular state-wide primary election * * *. A proposed revision may deal with more than one subject and shall be voted upon as one question. * * *"

It will have been observed that the foregoing section begins with these words: "In addition to the power to amend this Constitution * * * a revision of all or part of this Constitution" may be proposed in either house of the Legislative Assembly and that the section requires the vote of at least two-thirds of all the members of each house before the proposed revision may be referred by the secretary of state to the people for their approval or rejection. It is the only section of the constitution which provides the means for constitutional revision and it excludes the idea that an individual, through the initiative, may place such a measure before the electorate.

█ It is well established that when a constitution specifies the manner in which it may be amended or revised, it can be altered by those who favor amendments, revision, or other change only through the use of one of the specified means. *Boyd v. Olcott et al,* 102 Or 327, 202 P 431.

The constitution itself recognizes that there is a difference between an amendment and a revision; and it is obvious from an examination of the measure here in question that it is not an amendment as that term is generally understood and as it is used in Article IV, Section 1. The document appears to be based in large part on the revision of the constitution drafted by the "Commission for Constitutional Revision" authorized by the 1961 Legislative Assembly, v 1, Oregon Laws 1961, p 1514, and submitted to the 1963 Legislative

552

Assembly. It failed to receive in the Assembly the two-thirds majority vote of both houses required by Article XVII, Section 2, and hence failed of adoption, Senate and House Journal, 1963, pp 872–873.

■ While differing from that document in material respects, the measure sponsored by the plaintiffs is, nevertheless, a thorough overhauling of the present constitution and a complete constitution, commencing with the customary "The people of Oregon ordain this Constitution," and including an article providing for the transition period between the date of its adoption and the day it was to go into effect. It is 56 typewritten pages in length. It contains many and important changes in substance, many others in language, removing ambiguities and correcting errors, and still others in the arrangement of its various provisions.

To call it an amendment is a misnomer.

Whether it be a revision or a new constitution, it is not such a measure as can be submitted to the people through the initiative. If a revision, it is subject to the requirements of Article XVII, Section 2 (1); if a new constitution, it can only be proposed at a convention called in the manner provided in Article XVII, Section 1. There is, indeed, much in the document to indicate that it is intended to be a new constitution, rather than a revision, and that those who drafted it so considered it. We call attention to the following provisions. (The italics in all the matter quoted are added.)

The enacting clause reads:

"Be It Enacted by the People of the State of Oregon:

"The Constitution of the State of Oregon is amended by adoption of *the following Constitution*

of the State of Oregon *in lieu of the Constitution* of the State of Oregon of 1859, as amended, *which is repealed*:"

Notwithstanding the use of the word "amended", the foregoing language, considered in its entirety, can only mean that the existing constitution is to be supplanted by a new one.

Article X, Section 6, subdivision 2, reads in part:

"The authorization under *the former Oregon Constitution* for the incurring of state indebtedness for building and maintaining permanent roads * * * is continued in effect under *this Constitution.*"

Article XIII, entitled "Transitional," provides in part:

"Section 1. *The purpose of this Article is to insure an orderly transition from the former Oregon Constitution to this Constitution.* When that purpose is accomplished and all provisions of this Article cease to have any continuing effect, the Legislative Assembly, by law, shall so declare, and thereafter this Article shall not be considered as a part of this Constitution.

"Section 2. *Except as otherwise provided in this Article, this Constitution shall first become applicable on January 1, 1967, and the former Oregon Constitution shall continue to be applicable until that date.* However, amendments to or revisions of this Constitution may be proposed pursuant to this Constitution before that date, and laws to carry out the provisions of this Constitution or to insure *an orderly transition from the former Oregon Constitution to this Constitution* may be enacted before that date to take effect before, on or after that date.

"Section 3. Except as otherwise provided in this Constitution, a person holding any elective or appointive public office shall continue to hold that office and exercise the functions of that office until

that office is abolished or altered or his successor is selected and qualifies in accordance with this Constitution or laws enacted pursuant thereto."

However, it is not necessary to decide the difficult question whether the measure is a new or a revised constitution. In either case, the plaintiffs are not entitled to have it submitted to the people through the initiative.

■ The plaintiffs seem to believe that the defendant reviewed the constitutionality of the measure and, upon finding it invalid, took the course which they challenge. The defendant neither considered, nor was required to consider, the validity of the measure. Since the plaintiffs' petition proposed to submit to the people, under the initiative, a change in our constitution which the Attorney General advised the defendant would constitute a revision, the defendant necessarily was required to determine whether our laws granted him authority to pursue the course which the plaintiffs requested.

■ Hence, *Johnson v. City of Astoria et al*, 227 Or 585, 363 P2d 571, and like precedents, relied on by the plaintiffs, have no application here. These cases hold that the secretary of state has no discretion to refuse to discharge a ministerial duty imposed upon him by statute with reference to placing an initiative measure upon the ballot merely because, in his opinion, the measure, if enacted, would be unconstitutional. The measures involved in these cases were all embraced within the constitutional power of the people to enact laws through the initiative and their decision was based upon the principle, as stated in *State ex rel. Carson v. Kozer*, 126 Or 641, 649, 270 P 513, that "neither the executive department of the state nor the judicial department has authority to say to either of the legis-

lative branches of the state, 'The law you are proposing to enact is unconstitutional and because it is unconstitutional you cannot determine for yourself whether the same shall be enacted into law or not.' " If a revised or a new constitution were to be adopted by the people in a manner or through a procedure authorized by the constitution, clearly no court would be authorized to pronounce the instrument so adopted unconstitutional. The question here is whether the people themselves, by the existing organic law, have authorized the use of the initiative for the adoption of a revised or a new constitution. That was a question for initial determination by the defendant, since it involved the extent of his authority. It was not a matter of discretion. The present proceeding challenges his decision, and it becomes the duty of the court to decide whether he was right. A writ of mandamus may be issued only "* * * to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust or station * * *." ORS 34.110.

For the reasons hereinabove stated, the defendant was charged with no duty to furnish the plaintiffs with a ballot title, nor was he invested with authority to do so.

The writ is, therefore, disallowed.

DENECKE, J., specially concurring.

I concur in the majority opinion except for that part of the opinion which suggests that the petition submitted to the Secretary of State contains a "new constitution" and only can be proposed by a constitutional convention.

SLOAN, J., dissenting.

Time is of the essence in this case so it is not possible to express, at length, the reasons for my dis-

satisfaction with the majority decision. It is recognized, of course, that when this decision is announced time will no longer be material. But it is important that the parties be promptly informed. Accordingly, I will not delay this decision for the more exhaustive research I would prefer. Even so, there is compelling reason to disagree.

The brief filed by petitioners contained a documented recital of the legislative history of the initiative movement in Oregon and of the adoption of the constitutional declaration of the initiative power. The history of the several enabling legislative enactments was also described and relied on. The majority make no reference to this persuasive historical background. For the reasons before stated it is not possible to incorporate that historical study in this opinion. The material referred to in the brief is readily available for those who may desire to review it. An awareness of those events of the past would convince others, I am sure, that petitioners' reading of the constitution and the statutes is right. It can be gleaned from a study of the existing records of those events that it was not intended that the Secretary of State should have the power, now granted, to stay or deter an exercise of the people's power to govern themselves.

It seems important to observe that decision in this case should not be influenced, in the slightest, by any underlying philosophy that a free use of the initiative power to "* * * propose laws and amendments to the Constitution * * *." is unwise.

In casting the decision into the questionable contrast between the words "amendment" and "revision" the majority overlook the purport of the two sections of Article XVII of the constitution. Those two sections are directives that are limited to legislative proposals

for constitutional change. The last sentence of Section 1, Article XVII expressly states that "This Article shall not be construed to impair the right of the people to amend this ·Constitution by vote upon an initiative petition therefore." That sentence can be read to mean that none of the restrictions otherwise imposed by Section 1 apply to the initiative process. It is obvious that Section 2 is limited to a legislative proposal for revision, whatever the meaning of that word may imply. It appears, therefore, that there is no limitation upon the right of a citizen, or group of citizens, to propose amendments, either as to the number of amendments or the form that they may take.

If this understanding of Article XVII be right, and I believe that it is, it would follow that the real objection to the present proposal is in the form in which it is filed. If the present initiative petition had been filed in a form in which the existing constitution would be amended section ·by section or even article by article it could not very successfully be contended that the Secretary of ·State could refuse it. ·Or, if it had been filed in the form now generally used in amending statutes; that is to bracket out the language eliminated and italicize the language added, it would be difficult to say that the proposal was not an amendment. It is probable that by the use of either form of amendment a ·citizen asked to sign a petition or to vote would be better informed. But it is not the function of the Secretary of State to decide what form a petition should take. If a citizen dislikes the voluminous form of the proposal he can reject it.

The significant history of the years preceding the adoption of the initiative amendment lends advocacy to that interpretation of the constitutional provisions.

The course of the events which aroused the leaders

who proposed and the people who adopted the initiative amendment (augmented by the last section of Section 1, Article XVII), as revealed by history, was the inaction by lethargic or indifferent legislatures in regard to changes in the laws that the people deemed essential to their welfare. This, I take it to be, is the same belief of those who now submit the challenged proposal, namely; that the people be given an opportunity to approve or reject changes in our charter of government. This they should be entitled to do.

It must also be considered clear that the initiative process comprehended that if amendments are proposed in too great a number or too embracive in concept to be absorbed by the people in one election then such amendments would be rejected by the people and not by the Secretary of State. And, it appears doubtful that this court has that authority unless the initiative proposal would be repugnant to the supreme law of the land. It was suggested in behalf of defendant that if this court were to deny any discretion on the part of the Secretary of State, then, in that event, he would be obliged to accept and issue a ballot title for a petition seeking to enact Gone With the Wind, for example, as a statute. If reducing the argument to such an absurdity carries any persuasion at all it need only be said that such a decision can abide the event.

Even though none of my colleagues share my views I am, nonetheless, convinced that the writ should issue.