475 P.2d 11

Raymon L. SMITH, on behalf of himself and all other taxpayers of the State of Idaho, Plaintiff-Respondent,

v.

Pete T. CENARRUSA, as Secretary of State, Defendant-Appellant.

No. 10724.

Supreme Court of Idaho.

Sept. 9, 1970.

Dissenting Opinion Oct. 5, 1970.

Robert M. Robson, Atty. Gen., and Howard F. Manly, Special Asst. Atty. Gen., Boise, for defendant-appellant.

Iver J. Longeteig, of Ambrose, Fitzgerald & Longeteig, Meridian, for plaintiff-respondent.

Samuel Kaufman, of Anderson, Kaufman, Anderson & Ringert, Boise, for Citizens for the Protection of Idaho's Constitution, amicus curiae.

Raymond L. Givens, Carl P. Burke, Boise, Eugene L. Bush, Idaho Falls, Douglas D. Kramer, Twin Falls, Russell Randall, Lewiston, Perce E. Hall, Robert M. Rowett, Mountain Home, James E. Schiller, Nampa, E. B. Smith, Boise, Robert C. Strom, Craigmont, and Lloyd J. Webb, Twin Falls, amici curiae.

SHEPARD, Justice.

The facts in this case are not disputed. We are asked to determine whether the method prescribed in our constitution for revision of the constitution.is the sole and exclusive method. In actuality what we are being asked to consider and rule upon is the procedure for the adoption of a new constitution. Senate Joint Resolution 122 of the 1970 session of the Idaho Legislature prescribes a technique for revising the constitution of the state of Idaho in a manner not specifically authorized by the constitution. The plaintiff, Raymon L. Smith, brought this action seeking a declaratory judgment that Senate Joint Resolution 122 is unconstitutional and void. He also asked that the defendant Pete T. Cenarrusa, as Secretary of State, be enjoined from publishing the proposed constitution as a requisite notice preliminary to submission of that constitution to the voters of the state for approval or rejection. The district court issued judgment as prayed for by the plaintiff and defendant Cenarrusa has appealed.

In 1965 the Idaho Legislature enacted House Bill No. 280 (Chapter 317, Idaho Session Laws of 1965) which called a convention to revise or amend the constitution of this state at a time and place to be specified by the Governor but not more than 14 months following a general election in which a majority of the electors

might authorize a convention. The number of delegates to such convention and their qualifications and mode of election, the meeting and organization of the convention, the duties and duration of the convention and the financing therefor were also provided therein. All of the foregoing provisions of the said House Bill No. 280 were to be effective only if a majority of the electors voting in a general election authorized such a convention.

In addition to the foregoing provisions of House Bill No. 280, Secs. 11–14 thereof provided for the creation of a Commission on Constitutional Revision. The appointment and term of the 15 members of the Commission, the representation of geographical, economic and other interests within the state of Idaho, the organization and duties of the Commission, their pay and allowances and the assistance of the Legislative Council were all provided for in said House Bill No. 280. All of said provisions relating to the Constitutional Revision Commission were to become effective on July 1, 1965.

No person serving as a member of the said Commission was to be eligible for election as a delegate to the constitutional convention and the Commission was charged with making provisions for a constitutional convention in the event that one was authorized by the people of the state at a general election.

It is obvious that the 1965 session of the Idaho Legislature contemplated the calling of a constitutional convention for revision of the Idaho Constitution in the event that such was authorized by the voters of Idaho at a general election. It is equally obvious that the Commission on Constitutional Revision was to be only an adjunct and a preliminary to the proposed constitutional convention.

From the year 1965 until 1970, the legislature took no action to implement the provision of House Bill No. 280 by submitting to the voters the question of whether a constitutional convention should be called. During those years, however, the Commission on Constitutional Revision worked diligently in drafting a proposed revision of the Idaho Constitution. Information concerning its work was widely disseminated and a great many public hearings on the proposed new constitution were held both by the Commission and by the Legislative Council in various portions of the state.

The proposed revision of the Idaho Constitution was submitted by the Commission on Constitutional Revision to the second regular session of the legislature in 1970. That session of the legislature enacted Senate Bill No. 1599, which sought to amend Chapter 317 of the Laws of 1965 (House Bill No. 280) by striking all references therein to a constitutional convention and in effect converting that piece of legislation into one creating solely a Constitutional Revision Commission. It also directed the Commission, if its proposed revised constitution was approved by the legislature, to submit that proposed constitution directly to the electors of the state for approval or rejection. Senate Bill No. 1599 was, however, vetoed by Governor Samuelson.

Thereafter, Senate Joint Resolution 122 of the second regular session of the Fortieth Legislature in 1970 was passed by the requisite two-thirds majority of each house. It proposed a revised constitution for the state of Idaho (as drafted and recommended by the Commission on Constitutional Revision) and directed that the proposed revised constitution should be submitted directly to the electors of the state of Idaho at the next general election for approval or disapproval. The Secretary of State was directed to cause the proposed constitution to be published in newspapers of general circulation throughout the state of Idaho. Section 1 of said Senate Joint Resolution 122 provided:

"The Legislature of the state of Idaho does not deem it necessary to call a Constitutional Convention for the purpose of submitting a revised Constitution to the electors. This revised

Constitution shall be submitted for adoption or rejection, by majority vote of the electors voting on this proposal, at the next general election to be held on the Tuesday after the first Monday in November, 1970."

The focus of the dispute herein is Art. XX of the Idaho Constitution which provides:

"§ 1. *How amendments may be proposed.*—Any amendment or amendments to this Constitution may be proposed in either branch of the legislature, and if the same shall be agreed to by two-thirds of all the members of each of the two houses, voting separately, such proposed amendment or amendments shall, with the yeas and nays thereon, be entered on their journals, and it shall be the duty of the legislature to submit such amendment or amendments to the electors of the state at the next general election, and cause the same to be published without delay for at least six consecutive weeks, prior to said election, in not less than one newspaper of general circulation published in each county; and if a majority of the electors shall ratify the same, such amendment or amendments shall become a part of this Constitution.

"§ 2. *Submission of several amendments.*—If two or more amendments are proposed, they shall be submitted in such manner that the electors shall vote for or against each of them separately.

"§ 3. *Revision or amendment by convention.*—Whenever two-thirds of the members elected to each branch of the legislature shall deem it necessary to call a convention to revise or amend this Constitution, they shall recommend to the electors to vote at the next general election, for or against a convention, and if a majority of all the electors voting at said election shall have voted for a convention, the legislature shall at the next session provide by law for calling the same; and such convention shall consist of a number of members, not less

than double the number of the most numerous branch of the legislature.

"§ 4. *Submission of revised constitution to people.*—Any Constitution adopted by such convention, shall have no validity until it has been submitted to, and adopted by, the people."

The trial court held, and it is not disputed herein, that the proposed changes to be made in the Idaho Constitution by Senate Joint Resolution 122 are a revision rather than an amendment. Senate Joint Resolution 122 proposes a massive and radical change in the constitution and there can be no basis for characterizing these changes as mere amendments. The requirements of Secs. 1 and 2 of Art. XX of the Idaho Constitution are thus inapplicable to this controversy. Thus, the central question is whether Sec. 3 of Art. XX of the Idaho Constitution makes revision by a constitutional convention the exclusive method of revising the Idaho Constitution.

The respondent herein argues that McBee v. Brady, 15 Idaho 761, 100 P. 97 (1909), governs the question before us. In *McBee* the validity of amendments to the Idaho Constitution were challenged because they had not been submitted individually as Sec. 2 of Art. XX of the Idaho Constitution seems to require. The court, in holding those amendments to be invalid, stated:

" * * * when the electors of the state have incorporated into the fundamental law the particular manner in which the same [the constitution] may be altered or changed, then any course which disregards that express will is a direct violation of that fundamental law."

Holding as we have that this case involves not amendments but a massive revision of our constitution, we do not believe the language in *McBee* applicable to the case at bar.

Respondent also relies upon the case of McFadden v. Jordan, 32 Cal.2d 330, 196 P.2d 787 (1948). Although respondent's position finds support in some of the lan-

guage therein, the factual situation was substantially different than is presented herein. In *McFadden* it was sought by initiative to place on the ballot a proposed "amendment" to the California Constitution. The California Constitution authorized the initiative method for placing constitutional amendments before the voters of California. However, the California court held that because of the sweeping changes contemplated by the initiative the proposal was in actuality a complete revision of the constitution and therefore was not authorized to be presented as an "amendment" under the initiative proceedings of the California Constitution. As heretofore stated, the language of *McFadden* supports respondent's position herein, but that language in turn was taken from Livermore v. Waite, 102 Cal. 113, 36 P. 424 (1894), which case was also concerned with amendment of the constitution rather than revision. We therefore reject the contention of the respondent that *McFadden* is either controlling or persuasive in the case at bar.

The Oregon Supreme Court dealt with a problem similar to McFadden v. Jordan, supra, in the case of Holmes v. Appling, 237 Or. 546, 392 P.2d 636 (1964). The Oregon Constitution at that time provided for amendment of the constitution by initiative or by legislative proposal. It further provided that revision might be proposed by the legislature and approved by the vote of the people. An attempt was made to draft and submit a revision to the constitution by the initiative method and the Oregon court found the attempt unconstitutional.

Appellant argues that Sec. 2 of Art. 1 of the Idaho Constitution reserves to the people the right to alter their constitution as they see fit. Appellant further argues that under our republican form of government the legislature is representative of the people and therefore Sec. 2 of Art. 1 of the Idaho Constitution impliedly authorizes the legislature, on behalf of the people of the state, to propose a constitutional revision for approval by the people at a general election.

History is replete with examples of constitutions being proposed by methods not specifically authorized by then existing organic law which were later submitted to and approved by the people and are in existence as constitutions. Our own presently existing Idaho Constitution came into being in this fashion. On April 2, 1889, the then Governor of the territory of Idaho, E. A. Stevenson, issued a proclamation for the election of delegates to a constitutional convention. That proclamation was issued without any authority of law and was not implemented. On the 11th of May, 1889, George L. Shoup, who had succeeded Stevenson as Governor of the territory, issued a proclamation for a constitutional convention. No enabling act by the Congress authorized such a convention. A bill had been introduced in Congress to authorize such a convention, but it failed to pass. Governor Shoup thus acted and the constitutional convention was held without any authorization therefor. Shoup stated that as precedent for his action he was following the examples of Arkansas, California, Florida, Iowa, Kentucky, Michigan, Oregon, Vermont and Wisconsin which had adopted constitutions without enabling acts.

Likewise the Constitution of the United States came into being without specific authorization or provision therefor in any organic instrument. It will be remembered that the several United States were then functioning under the adopted Articles of Confederation and that the convention which met in Philadelphia was avowedly for the purpose of amending the Articles of Confederation. That convention, however, without any authority for its actions,[1] proceeded to completely revise not only the

---

1. Sutherland, J., in Home Building & Loan Association v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934) ; Farrand, Records of the Federal Convention, (1911), III, 13.

organic act but the entire structure of government by proposing a completely new and revised organic instrument for ratification by the people.

Our attention is called to Sec. 2 of Art. 17 of the constitution proposed by Senate Joint Resolution 122, which specifically authorizes the submission of a proposed amendment or revision of that proposed new constitution by either a constitutional convention method or a Constitutional Revision Commission method used in the case at bar. Respondent argues that the inclusion of such an alternative method of revision militates against appellant's argument herein that the constitutional convention method is not the exclusive method to propose such changes. Otherwise, respondent argues, why is it necessary to place such alternative methods in the new constitution if the methods expressed in the present constitution are not exclusive? We cannot agree that attempted solution of this vexatious problem is an admission by the Commission on Constitutional Revision and the legislature that their efforts were without authority and foredoomed to failure.

Appellant places his primary reliance on two cases, Wheeler v. Board of Trustees, 200 Ga. 323, 37 S.E.2d 322 (1946), and Gatewood v. Matthews, 403 S.W.2d 716 (Ky.1966). In *Wheeler* the Georgia court was faced with substantially the same question as is presented in the case at bar, to-wit: whether or not their constitution could be revised by a method other than convention when the convention method was specified in their constitution. That court said:

"It is contended that this provision [constitutional convention] means that a completely revised or new constitution can be formulated by a convention, and in no other manner. We are now dealing with a written constitution—the original law by which our system of government was set up. It creates the government. By its provisions the three branches of our government—legislative, executive, and judicial—are created. The three branches of government must look to it

for all their power and authority. Not so with the sovereign power, the people. Under our system of government all power and authority is vested in the sovereign people, subject only to such limitations as they have expressly imposed upon themselves by this organic law, the constitution. With this as the basis from which we reason, is it true that this provision of the constitution of 1877 limits the power of the sovereign people to a convention as the only means by which they can have a completely revised or new constitution? The language does not say so. The section purports to do nothing more than to place limitations upon the legislative branch of government as to the manner in which a convention can be called by this branch of the government. If we should say that the sovereign people themselves can adopt a new constitution by the convention method only, we would by implication be writing into this clause of the constitution a limitation on the sovereign power of the people. We do not hesitate to say that a court is never justified in placing by implication a limitation upon the sovereign. This would be an unauthorized exercise of sovereign power by the court."

It is pointed out that *Wheeler* differs from the case at bar in that *Wheeler* dealt with a situation factually similar but later in time than the case at bar. In *Wheeler* the revised constitution had been submitted to the people of Georgia and had been by them approved. Consequently, the court was in effect dealing with an after the fact situation rather than a before the fact situation as in the case at bar. Nevertheless, the language, logic and reasoning of *Wheeler* is highly persuasive.

The Kentucky court on the other hand in Gatewood v. Matthews, supra, was presented with essentially the same question as in the case at bar and at precisely the same point in time, to-wit: prior to the general election for approval or disapproval of the revised constitution. The court in *Gatewood* relied heavily upon Wheeler v.

Board of Trustees, supra, and In Re Opinion to the Governor, 55 R.I. 56, 178 A. 433 (1935). The court in *Gatewood* stated:

"The primary question to be considered is whether by the terms of Sections 256 and 258 of the Constitution the people have imposed upon themselves exclusive modes of amending or of revising their Constitution.

"Section 258 authorizes the General Assembly to enact a law at two successive sessions providing for taking the sense of the people as to the necessity and expediency of calling a convention for the purpose of revising the Constitution. Section 256 provides for the proposal of amendments to the Constitution by the General Assembly.

"It is the appellant's contention that those sections do represent exclusive modes of reforming the Constitution. * * * It is his argument that whatever power the Constitution has conferred upon the legislature in reference to proposing amendments or other modes of revision must be strictly pursued.

"This is the first time this Court has had before it the question of whether sections 256 and 258 provide exclusive modes for changing the Constitution. In several cases we have considered efforts to amend or revise the Constitution in compliance with one of those sections. In each case this Court has held that such effort must follow precisely the procedure established in that particular section. (citations omitted) In no case have we held that sections 256 and 258 are the exclusive modes of changing the constitution.

"Here the proposed procedure does not follow the dictates of section 256 or 258 of the Constitution. In fact, there is no section specifically setting out the mode of revision prescribed in S.B. 161. If there be authority for such action it must be derived from the sovereign power of the people as delineated in section 4 of the Bill of Rights:

'* * * For the advancement of these ends, they have at all times an inalienable and indefeasible right to alter, reform or abolish their government in such manner as they may deem proper.'

\* \* \* \* \* \*

"In the ultimate sense, the legislature does nothing unless and until the people ratify and choose to give the revised constitution life by their own direct action. In this respect the legislature merely performs the role of messenger or conduit. The process is no more than corollary to the right of petition : and address reserved to the people in section 1 of the Constitution.

\* \* \* \* \* \*

"Each of the four constitutions of this state has provided a method or methods of amendment and revision. Significantly, in none of them have such specified procedures been declared exclusive. The reason is obvious. The right of each generation to choose for itself is inalienable, as it was recognized and said from the very beginning. Being thus inalienable, that right cannot be cut down or subjected to conditions any more than it could be completely denied by one generation to another. So long as the people have due and proper notice and opportunity to acquaint themselves with any revision, and make their choice directly by a free and popular election, their will is supreme, and it is to be done."

Respondent contends that the language of *Gatewood* is not applicable to the case at bar since the convention at which the Kentucky Constitution was adopted had before it a proposal that the constitution should not be altered, amended or changed in any way except as provided therein, and such proposal was rejected. Our own constitutional convention proceedings indicate a lack of any discussion on the adoption of Sec. 3 of Art. XX of our Constitution. It was merely stated during the proceedings that most states had such a provision and

therefore it was recommended that it be included in our constitution. Nothing was said regarding its exclusiveness or non-exclusiveness. We cannot from that silence jump to the conclusion that the delegates to our constitutional convention intended that the provisions laid down for revision of the constitution were to be exclusive and the only authority for revision. Particularly, respondent's contention must be rejected since those same delegates to the constitutional convention were lacking in any formal authority to so meet and propose a new constitution.

The legislature of this state has received, pursuant to Art. 3, Sec. 1 of our constitution, the legislative power. As has been stated repeatedly, and as recently as Eberle v. Nielson, 78 Idaho 572, 306 P.2d 1083 (1957), the constitutional provisions are limitations on legislative power and not a grant of power as is the case with the Constitution of the United States. Nowhere in Art. 3 of the constitution, wherein the powers of the legislature are limited, is there to be found any specific limitation on the legislature as respects amendment or revision of the constitution.

Turning now to that specific enumeration of the power of the legislature to indulge in constitutional revision, we find that if the legislature "shall deem it necessary to call a convention to revise or amend this constitution," they shall recommend to the electors such proposition for approval at the next general election. Appellant suggests that the contrast between such wording in our constitution and the language of the California constitution which provides in pertinent part:

"Whenever the legislature *shall deem it necessary to revise this constitution* they shall recommend * * * a convention.",

clearly indicates that the Idaho Legislature need call a convention for revision of the constitution only when it deems such action necessary, while in California if the legislature deems it necessary to revise the constitution they may only recommend the calling of a convention. Appellant suggests that the California constitution therein is exclusive in its methodology for the revision of the constitution while Idaho's revision provision is not an exclusive method.

Sec. 2 of Art. 1, of the Declaration of Rights in our constitution places the political power in the people of this state, providing "they have the right to alter, reform or abolish the same whenever they may deem it necessary * * *." If we were to accept respondent's argument that the people have the right to revise the constitution only through the calling of an authorized convention, then we must also recognize that the will of the people may be then frustrated by the legislature since the legislature could refuse to call a convention. It has also been demonstrated by the hereinabove referred to cases from other jurisdictions that the people are unable to override inaction by the legislature in calling for a constitutional convention through the medium of initiative. Hence, if we were to adopt the theory of the respondent, it is clear that the will of the people could be frustrated by inaction of the legislature. Such would not be in accord with the Declaration of Rights set forth in Sec. 2, Art. 1 of the Idaho Constitution. Such theory is contrary to the fundamental concept of our republican and representative form of government wherein the legislative branch of government is elected by the people to represent them and put forward their desires and needs in the form of legislative action.

The legislature has by express resolution deemed the calling of a constitutional convention unnecessary. The work and the result of the work of the Commission has been widely publicized through the press and the medium of public hearings. The legislature approved the proposed new constitution and by the same vote directed that it be submitted directly to the people for approval or rejection. We retain our faith in our people and their intelligence for being informed in matters of their

government. Theirs will be the final determination as it should be ideally in all matters of their government.

We hold therefore that the judgment of the district court must be reversed and the cause is remanded with directions to enter judgment in favor of the defendant. Costs to appellant.

McQUADE and DONALDSON, JJ., concur.

McFADDEN, Chief Justice (dissenting).

I am unable to accept the conclusion of the majority opinion that the provisions of Idaho Const. art. 20, § 3 do not provide the exclusive method for the legislature to submit to the electors the question of a constitutional revision. Idaho Const. art. 20, § 1 provides one of the methods to amend the constitution, and § 3 provides for an alternative method for amendment, or revision, i. e., by calling a constitutional convention. It is my conclusion that this article of the constitution limits the legislature to the procedures provided therein for either amendment or revision.

This court in Eberle v. Nielson, 78 Idaho 572, 306 P.2d 1083 (1957), held that the Idaho constitution is a limitation and not a grant of authority to the legislature. Based on this opinion, appellant contends that since the constitution does not specifically prohibit the proposed method of revision, the legislature can properly adopt procedures as provided by Senate Joint Resolution 122 of the second session of the Fortieth Legislature (S.L.1970, p. 739). It is my understanding that the authority of the legislature is unrestricted (except as specifically limited by the constitution) in the area of *legislative action;* that is, the legislature has authority to make, alter and repeal any laws it desires, except as is specifically prohibited by the constitution. However, the area of *constitutional amendment* or *revision* is not an *ordinary* legislative action, but is an extraordinary action provided for by our constitution

and one wherein the legislature is not free to act on its own initiative. Thus, it is my opinion that the rule of Eberle v. Nielson, supra, is not applicable in this case dealing with *extraordinary* powers of the legislature. This point is well articulated in the case of Board of Supervisors of Elections for Anne Arundel County v. Attorney General, 246 Md. 417, 229 A.2d 388 (1967), wherein the court stated:

"Commentators, lay and judicial concur almost unanimously in the view that the general power of a state legislature to make, alter and repeal laws, pursuant to the constitution by which the people created the legislature, does not include the power or the right to make or remake the fundamental law, the constitution. A state constitution may aptly be likened to a legislative act enacted directly by the people themselves in their sovereign capacity as a political entity (that is, by the voters, for 'the original power of the people, in their aggregate political capacity, is delegated in the form of suffrage to such persons as they deem proper,' Anderson v. Baker, 23 Md. 531, 619), and therefore is the fundamental, extraordinary act by which the people establish the structure and mechanism of their government. Cooley, Constitutional Limitations (8th Ed.), p. 355; Jameson, Constitutional Conventions, pp. 84–86, 422 and 586; Hoar, Constitutional Conventions, pp. 80–82; 16 Am.Jur.2d, Constitutional Law § 26; [citations]. Essentially, a constitution is fundamental legislation directly by the people acting politically in their sovereign capacity, while a law is a rule of conduct prescribed by the legislative agents of the people under and subject to the delegated limitations of the previously ordained superior legislation, the Constitution." 229 A.2d at 394.

This extraordinary authority of a legislature to deal with amendment or revision of the constitution was considered by this court in Holmberg v. Jones, 7 Idaho 752, 65 P. 563 (1901).

"The first question presented is fraught with much embarrassment. The court is asked to hold that what is claimed to be a part of the constitution is unconstitutional,—a very delicate question, to say the least. It will be seen, from a reading of the provisions of section 1, art. 20, quoted above, that the' power to propose amendments has been granted by the people to the legislature. While the power of the legislature to enact laws is inherent, so far as legislative enactment is concerned, yet the power to propose amendments to the constitution is not inherent. The power to make constitutions and to amend them is inherent, not in the legislature, but in the people. This being true, should the so-called amendment be held void for the reason that the resolution proposing it did not receive a sufficient number of votes in the lower house of the legislature? The amendment was proposed by a department of the government authorized to propose it. It was duly published, and every voter must be presumed to have been familiar with its terms. It was, in the manner provided by the constitution, so far as the question of its adoption or rejection is concerned, submitted by ballot to the voters of the state for adoption or rejection, and was by a large majority (13,322 for, 2,677 against) adopted. The only irregularity is the fact that it did not receive the votes of two-thirds of the members of the house. It cannot be questioned but that any voter of the state, by proper proceedings in the district court, or in this court, could have obtained a writ of prohibition restraining the secretary of state from certifying the question of adopting said proposed amendment to the various county auditors. The official ballot could have been protected against the improper submission of such question, and could have been purged of the presence of such question thereon, by proper judicial proceeding. * * *." 7 Idaho at 758, 65 P. at 564.

While the foregoing quotation from Holmberg v. Jones is dicta, nonetheless it is persuasive regarding the authority of the legislature to act in the area of amendments or revision of the constitution.

The case of Ellingham v. Dye, 178 Ind. 336, 99 N.E. 1 (1912), involves a factual situation very similar to the one at bar. The Indiana Supreme Court held that the legislative power which the constitution bestowed on the general assembly is the power to make, alter and repeal laws. The grant of legislative power in the constitution did not transfer from the people to the legislature all the legislative power inhering in the former. The court also quoted Jameson on Constitutional Conventions, "That, whenever a Constitution needs a general revision, a convention is indispensably necessary." (99 N.E. 1 at p. 7.) The court went on,

"The presence of this article [a provision of the Indiana constitution similar to article 20 section 2 of the Idaho constitution] * * * fights against the contention that the general grant of legislative authority bears in its broad arms by implication any power to formulate and submit proposed organic law whether in the form of an entire and complete instrument of government to supersede the existing one or single amendment. For if the General Assembly have the greater power, unfettered power, under the general grant, what necessity could there have existed for giving the lesser, special power, with the checks and limitations accompanying it?" 99 N.E. 1 at p. 8.

The Indiana court said further, and I believe this to be the fundamental principle of constitutional revision:

"* * * [It is the rule] that, where the means by which the power granted shall be exercised are specified, no other or different means for the exercise of the power can be implied even though considered more convenient, or effective, than the means given in the Constitution." 99 N.E. 1 at p. 16.

That court summed up its decision by saying:

> " * * * [T]he act of 1911 is invalid for a want of power in that body to draft an entire Constitution and forthwith submit it to the people under its general legislative authority, if the instrument be conceded to be a new Constitution and not merely amendments; and that, if it be considered as merely a series of amendments, it is a palpable evasion and disregard of the requirements and checks of article 16 [similar to art. 20, § 2 of the Idaho constitution], and is for that reason void." 99 N.E. 1 at p. 19.

Other cases and authorities have held that when the constitution prescribes by its own terms the method and manner in which it may be changed, altered or revised, such limitations must be strictly observed. See Holmes v. Appling, 237 Or. 546, 392 P.2d 636 (1964); Revira-Cruz v. Gray, 104 So. 2d 501. (Fla.1958); McFadden v. Jordan, 32 Cal.2d 330, 196 P.2d 787 (1948). See also Jameson, Constitutional Conventions, Ch. VIII (2d ed. 1869); and Cooley, Constitutional Limitations, p. 81 (8th ed. 1927).

The procedures adopted by the legislature in enacting the resolution involved here have completely eliminated two essential steps for a revision of a constitution which, in my opinion, are mandatory under our present constitution. Those are, (1) the submission to the electors of the state the question as to whether or not they desire a constitutional convention to be called, and, (2) the actual calling of the constitutional convention, which convention would be comprised of members who were selected by the electors for the sole purpose of revising the constitution.

The procedure originally proposed by the legislature when it enacted S.L.1965, Ch. 317, (p. 891), was in full conformity with the constitutional provision. When the legislature subsequently passed the joint resolution submitting the issue of constitutional revision directly to the people without having first complied with the constitutional convention procedure, it ignored its prior enactment of S.L.1965, Ch. 317 (p. 891) which is still on the books. The legislature assumed authority by its own mandate which, in my opinion, it did not have.

The conclusion that art. 20, § 3 is exclusive is further compelled by an examination of that section together with the other sections of art. 20. The Idaho legislature has followed a procedure in substantial conformity with that set out in art. 20, § 1 of the Idaho constitution; yet, § 1 of that article says nothing about revisions. It speaks only of amendments. Surely, if the drafters of our constitution had intended that art. 20, § 1 procedure be available for revision as well as amendments, they would have taken the simple step of including revisions in that section.

The legislature has seen to it that a constitutional convention will never again be necessary or open to argument in Idaho by means of art. 17, § 1 of the proposed constitution, which provides:

> "The legislature, two-thirds of the members of each house concurring, may propose a new constitution, or a revision of or amendments to, the constitution * * *."

The inference from this proposal is clear: The legislature is aware of the obvious meaning of § 3 as it presently stands and is nevertheless avoiding its mandate with a resulting enhancement of the legislature's own power in the future. That is, the legislature may now initiate and control the constitutional revision process. Such a fundamental check on the power of a branch of government as a constitutional convention is being set aside in the name of expediency and by means of tenuous interpretation.

Furthermore, when art. 20 is read as a whole, the interpretation appellant proposes is also inconsistent with § 2. That section provides that amendments proposed by the legislature shall be voted on individually. The legislature is not constitutionally permitted to submit a number of amendments

to be voted on as a whole. Therefore, could it possibly be allowed to submit a number of amendments so substantially altering the existing document as to be within the definition of a revision, and avoid the prohibition of § 2? If the legislature could not propose amendments in the method attempted, than *a fortiori* it could not propose a total revision by the proposed method.

Moreover S.J.R. No. 3, 1967 S.L., p. 1569, submitted to the electors an amendment of art. 20, § 2, which proposed that § 2 read as follows:

"If two or more amendments are proposed, they shall be submitted in such manner that the electors shall vote for or against each of them separately, *provided that if any proposed amendment is submitted to the legislature by a duly authorized constitutional revision commission for approval and submission to the electors, it may embrace as one question any or all subjects contained within any one Article of the Constitution and related subjects within any other Articles of the Constitution.*"

This resolution was voted on in the general election on November 5, 1968 and was defeated. Certainly this has a bearing on the issue as to whether or not a complete revision can be submitted by the legislature for one vote by the people when the legislature has previously been denied the power to submit to the people at one time an amendment embracing more than one provision.

The appellant cited two cases upon which heavy reliance is placed as authority to uphold its position as to the validity of the contested procedure. Those cases are: Wheeler v. Board of Trustees, 200 Ga. 323, 37 S.E.2d 322 (1946), and Gatewood v. Matthews, 403 S.W.2d 716 (Ky. 1966). As pointed out by the majority opinion the authoritative value of *Wheeler* in this factual situation is diminished by reason of the fact the issue of validity of a constitutional revision was presented to the court after the proposed revision had been approved by the electorate.

Insofar as the *Gatewood* case is concerned, the opinion was severely criticized by the dissent to that opinion. Also, the position of the majority was well exposed by a case comment in 81 Harvard Law Review 693 (1968), wherein it pointed out,

"Furthermore, it is not accurate to say, as the court did, that 'the legislature does nothing unless and until the people ratify * * *,' for the procedure sanctioned by *Gatewood* has the effect of significantly increasing the legislature's power to initiate and control the process of constitutional revision. In fact, the legislature alone decided to have a new constitution drafted. The check provided by the requirement that the voters ratify this decision was circumvented, if not overridden in view of the popular feeling evidenced by the electorate's previous rejection of the legislature's proposal to call a convention. * * *. [81 Harv.L.R. p. 695]

" * * * [A]lthough the court seemed to suggest that requiring final ratification instead of popular participation at the drafting stage had the advantage that 'the people [then] need not rely on a representative to speak for them,' the use of a convention of elected delegates may itself frustrate simple majorities attempting to carve out positions of power in the fundamental law; to the extent that the effect of constitutional change on interest groups can be predicted, the negotiations at the convention are likely to produce a trade-off of preferences which in theory will accommodate the different interests represented. Thus, the court's implicit conclusion that 'the people' in whom '[a]ll power in inherent' in Kentucky are a simple majority of those voting flies in the face of the requirements under the prescribed procedures which put some restraints on the power of such a ma-

jority to revise the constitution. [81 Harv.L.R. p. 696]

"* * * If the prescribed revision procedure really was obsolete, the proper method for changing it was by amendment, but, in fact, the people of Kentucky rejected a proposed amendment which would have abandoned the requirement for legislative action at two successive sessions. The electorate's response to other legislative proposals for constitutional change similarly belies the existence of any emergency or revolution in progress. Indeed the constitution submitted to the people under *Gatewood* suffered an ignominious defeat. Thus, it seems particularly ironic in *Gatewood* to justify the legislature's actions on a theory of popular sovereignty. Surely neither popular recalcitrance nor indifference can excuse departures from the constitution. [81 Harv.L.R. p. 697]"

Thus, it is my opinion that the judgment of the trial court should be affirmed.

SPEAR, J., concurs in this dissent.